YOUNG ET AL. *v.* MILLER ET AL.

[No, 17,540. Filed September 29, 1896.]

WILLS.—*Mental Incapacity.*—*Monomania.*—*Burden of Proof.*—In an action to set aside a will on the ground of mental unsoundness, proof that testator was a monomaniac does not require defendant to show by a preponderance of the evidence that such monomania did not enter into or in any manner control the execution of the will.

EVIDENCE.—*Prima Facie Case.*—*Practice.*—A *prima facie* case, made by plaintiff, must always stand unless its force is broken by the defendant's evidence; but the defendant is never required, under the general denial, to negative the truth of the plaintiff's *prima facie* case by a preponderance of the evidence.

WILLS.—*Mental Incapacity.*—*Monomania.*—*Statutes Construed.*— Under section 2726 Burns' R. S. 1894 (2556 R. S. 1881) providing that persons of unsound mind may not execute a will, construed with section 2714 Burns' R. S. 1894 (2544 R. S. 1881) which defines a "person of unsound mind" as an "idiot, *non compos,* lunatic, monomaniac, or distracted person," testamentary capacity is not denied to a monomaniac where the execution of the will is not influenced by such mental aberration.

From the Montgomery Circuit Court. *Reversed.*

*Brush & Snyder, Kennedy & Kennedy,* and *G. F. Harvey,* for appellants.

*Crane & Anderson,* for appellees.

HACKNEY, J.—The appellees sued the appellants to set aside the will of Alfred D. Young, alleging that the testator was of unsound mind and that the will was unduly executed.

Upon the trial, the court charged the jury, among other propositions, as follows: "5. Soundness of mind is presumed to exist in all persons until the contrary is shown, and whosoever would set aside a will because of unsoundness of mind of the testator, must prove such unsoundness to exist. Mere weakness of

mind is not such unsoundness of mind as will of itself invalidate a will, and a mind that is not capable of making important contracts, or engaging in complex or intricate business matters may nevertheless be competent to make a valid will. What the law requires to make a valid will is, that the testator shall possess mind enough to comprehend the business in which he is engaged, and to know the extent and value of his property and the number and names of the persons who are the natural objects of his bounty; their deserts with reference to their conduct and treatment towards him; to rationally apprehend and consider his relations and natural duty to those who stand nearest to him in blood, and other kindred, and the manner he wishes to distribute his property among them, or to withhold it from them, and that he shall have sufficiently strong and active mind and memory to retain all these facts in his mind long enough to have his will prepared and executed. And in this case, if you find that Alfred D. Young, at the time he executed the will in suit, was possessed of mental faculties to the foregoing extent, then you should find that he was of sound mind, and if not, then you should find that he was of unsound mind.

"9. Under our statute all persons except infants and persons of unsound mind may dispose of their property by will, and the words persons of unsound mind shall be taken to mean any idiot, *non compos*, lunatic, monomaniac, or distracted person, and thus the term unsound mind includes every species of unsoundness of mind. A monomaniac is a person who is deranged in a single faculty of his mind, or with regard to a particular subject only. And it is a fact that persons possessed of monomania may, and often do, on all subjects foreign to the subject of mania, act rationally and with ordinary prudence and judgment.

While, therefore, monomania is embraced within our statutory definition of what constitutes unsoundness of mind, yet it does not follow that every one possessed of monomania is incompetent to make a valid will.

"10.   In this case therefore, *if you find that Alfred D. Young, at the time he executed the contested will, was possessed of monomania, then it will be presumed that he was incompetent to make a valid will,* and if it be shown that his mania related to the dispositon of his property, or to those who stood in such relation to him as to be the natural objects of his care and bounty, or entered into the execution of his will in any way, then you should find him of unsound mind and return your verdict for the plaintiffs. But, on the other hand, if you find that he was possessed of monomania at the time he executed the contested will, *and that the defendants have established, by a clear preponderance of the evidence, that his monomania related to a subject foreign from the disposition of his property and foreign from those who were the natural objects of his care and bounty, and foreign from the subject of his will and from the beneficiaries thereunder, and that at the time of the execution of the will he possessed mind enough to comprehend the business in which he was engaged, to know the extent and value of his property, the number and names of the persons who were the natural objects of his bounty, their needs and deserts with regard to their treatment towards him, and to rationally apprehend his relation to his grandchildren and the manner he wished to distribute his property among them, or withhold it from them, and that he had a sufficiently strong and active mind and memory to retain all these facts in his mind during the preparation and execution of his will, and that his will was in no way af-*

*fected by his mania,* then you should find him of sound mind and return your verdict for the defendants.

"11.  A man may have sufficient mind to know and comprehend that he is making his will and thereby disposing of his property, giving it to some of the natural objects of his bounty to the exclusion of others, and have an object in so doing which he fully comprehends, and yet be prompted to so dispose of his property by some form of monomania.  And if the monomania affected in any way or entered into the making of the will, such will would be invalid, and should be set aside.

"12.  A person of unsound mind is incapable of making a valid will, and if you find from the evidence that Alfred D. Young was a person of unsound mind at the time of making his will, it is not necessary for the plaintiffs to show that such unsoundness had anything to do with the manner of disposing of his property.  *If unsoundness of mind has been proven to your satisfaction it is incumbent upon the defendants to show, by a preponderance of the evidence, that the unsoundness was of such a character as did not impair the mind of Alfred D. Young to such an extent as to render him incapable of making a will, or that the derangement of his mind in no way affected the disposition of his property or entered into the making of his will.*"

Objections are urged by counsel for the appellants to the charges numbered ten and twelve, while counsel for the appellees contend that any objections thereto are of no avail when they are considered in connection with those numbered five, nine, and eleven.

In the tenth charge the jury were told, by the first proposition in italics, that the want of testamentary capacity is presumed from the existence of monomania, and by the second proposition in italics, they

were told that the contestees held the burden of show-
ing "by a clear preponderance of the evidence" that
such monomania did not enter into or in any manner
control the execution of the will and, in addition, that
the testator possessed testamentary capacity accord-
ing to a standard defined.  By the twelfth charge the
jury were instructed, by the words therein italicized,
that if general unsoundness of mind were shown to
have existed when the testator executed his will, the
burden rested upon the contestees "to show by a pre-
ponderance of the evidence" that such unsoundness
was not of a character to deprive him of testamentary
capacity, and that it in no way affected the disposi-
tion of his property.  These propositions, as we under-
stand them, are erroneous and are not cured by the
other charges.

The issue, upon this branch of the case, was this:
Did the testator possess testamentary capacity at the
time of the execution of his will?  The appellees as-
sumed the burden of showing, by a preponderance of
the evidence, that he had not such capacity.  The ap-
pellants answered by general denial and assumed no
burden of an affirmative character.  The obligations
of the parties were not different from those in the or-
dinary case where facts are affirmed upon one side and
denied upon the other.  A *prima facie* case, made by
the plaintiff, must always stand unless its force is
broken by the defendant's evidence; but the defendant
is never required, under the general denial, to negative
the truth of the plaintiff's *prima facie* case by a pre-
ponderance of the evidence.  If, upon the whole evi-
dence, the plaintiff does not have a preponderance, the
defendant must recover.  If the scales are equally bal-
anced the plaintiff must fail.  It is perfectly clear,
therefore, that to break the force of a *prima facie* case
it is not necessary that the contrary shall be estab-

lished by a preponderance of the evidence, but that it is sufficient if, from the evidence *pro* and *con,* the plaintiff cannot be said to have a preponderance upon his side of the issue. As to the character of the issue, the presumption, from the presence of monomania and the burden of the issue, in cases of the character of the present, the rules were fully discussed and determined in the case of *Blough* v. *Parry,* 144 Ind. 463; See also *Teegarden* v. *Lewis, ante,* 98.

It is earnestly and ably contended by counsel for the appellees that, by section 2726, R. S. 1894, persons of unsound mind may not execute a valid will, and that section 2714, R. S. 1894, so defines the phrase "persons of unsound mind," as employed in said section 2726, as to include monomaniacs. In other words, the contention is made that testamentary capacity is denied by statute, and does not exist where the testator is an "idiot, *non compos,* lunatic, monomaniac, or distracted person," regardless of the degree of mental aberration, and whether the will was influenced or controlled by such aberration or not. It has been frequently held since the adoption of these statutes, and correctly so, we have no doubt, that the phrase "unsound mind," as employed in section 2726, *supra,* was employed with reference to the existing and then well understood legal definition of testamentary capacity. That definition has always recognized a mental condition not wholly sound, but possessing the scope and power to comprehend the property subject to bestowal, the natural objects of such bounty, including their just deserts, and to direct and execute a testament bestowing such property without influence from existing mental infirmity. Some of our own cases recognizing and sustaining this definition are *Kenworthy* v. *Wil-*

VOL. 145—42

*liams,* 5 Ind. 375; *Lowder* v. *Lowder,* 58 Ind. 538; *Wray* v. *Wray,* 32 Ind. 126; *Durham* v. *Smith,* 120 Ind. 463; *Burkhart* v. *Gladish,* 123 Ind. 337; *Harrison* v. *Bishop,* 131 Ind. 161; *Blough* v. *Parry, supra; Teegarden* v. *Lewis, supra.*

In the case of *Blough* v. *Parry, supra,* it was expressly held that the phrase "unsound mind," as employed in the statute of wills, was employed in the sense in which testamentary incapacity was then, and is yet, understood, and not as excluding every possible phase and degree of mental infirmity.

In oral argument counsel for appellees suggest that the instructions are not properly in the record, and cite *McCoy* v. *Able,* 131 Ind. 417; *Jenkins* v. *Wilson,* 140 Ind. 544; *Bement* v. *May,* 135 Ind. 664. We find no irregularity in the presentation of the instructions by the record. They were brought in by a bill of exceptions, which is copied into the transcript regularly certified. From the character of the cases cited it is probable that counsel intended to attack the sufficiency of the record to present the evidence, since we find that the bill of exceptions in the transcript is a copy of the original bill in all respects excepting that it includes the original longhand manuscript of the evidence, which was taken from the original bill and inserted in the record at the point in the copied bill which it occupied in the original. Some question exists, in the profession, as to the correctness of that practice, but, since we do not pass upon any of the questions arising upon the evidence, deeming them unimportant, or that they may not again arise, we do not express an opinion as to the method here employed. We may observe, however, that the error in instructions would exist under any evidence possible, within the issues.

For the error suggested the judgment of the circuit court is reversed, with instructions to grant the motion of the appellants for a new trial.