CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS
RAILWAY COMPANY v. MILLER.

[No. 20,295. Filed May 23, 1905. Rehearing denied October 25,
1905.]

1. DISCOVERY.—*Interrogatories to Party.—Corporations.—Duty
to Answer.*—Interrogatories to parties must be answered without evasion, and a corporation must have same answered by an agent who has knowledge of the facts. p. 384.

2. RAILROADS. — *Switches.—Sidewalks.—Negligence.*—A railroad company, which owns and operates a switch across a sidewalk in a municipal corporation, is liable for its negligence in the maintenance of such crossing. p. 384.

3. TRIAL.—*Burden of Proof.*—A *prima facie* case made by plaintiff's evidence stands until broken by defendant's. p. 385.

4. SAME.—*Instructions.—Railroads.—Injuries Shortening Life.—
Compensation.*—An instruction, in an action for damages on account of the negligence of a railroad company, that plaintiff is not entitled to recover anything for the shortening of her life by reason of alleged injuries, but that such fact may be considered in determining the extent of her injuries, is not erroneous where the court has also instructed that only compensatory damages can be allowed, and that damages can be given only for suffering directly traceable with reasonable certainty to the negligence complained of. p. 385.

5. SAME. — *Instructions. — When Cause for Reversal.* — Instructions which do not mislead the jury will not cause a reversal. p. 387.

6. SAME.—*Instructions.—No evidence to Support.*—Instructions asked should be refused where there is no evidence tending to support them. p. 387.

7. SAME.—*Interrogatories to Jury.—Itemizing Damages in Tort.*—Interrogatories to the jury to itemize damages in negligence cases are not permissible. p. 389.

8. SAME.—*Interrogatories to Jury.—Doubts.—How Resolved.*—All doubts as to the meaning of an interrogatory to the jury will be resolved in favor of the general verdict. p. 389.

9. NEW TRIAL.—*Causes Therefor.—Inconsistency of Answers to
Interrogatories and General Verdict.*—The inconsistency of the answers to the interrogatories to the jury and the general verdict is not a cause for a new trial. p. 389.

10. SAME.—*Excessive Damages.—Whether Answers to Interrogatories Considered.*—Where excessive damages are alleged as a reason for a new trial, the evidence alone, and not the answers to interrogatories, can be considered. p. 391.

11. NEW TRIAL.—*Excessive Damages.*—*Answers to Interrogatories.*
—*New Trial without Motion.*—Where the answers to inter-
rogatories to the jury show that the general verdict is unjust
the trial court may grant a new trial for a cause not specified
in the motion therefor or may grant a new trial on its own
motion.    p. 392.

12. SAME. — *Excessive Damages.* — *Railroads.* — A verdict for
$7,500, in an action by a woman against a railroad company for
damages for personal injuries, is not excessive where the
proof shows that she received an oblique fracture of the knee
resulting in a total collapse of the nervous system and a conse-
quent, probably permanent, total disability.    p. 392.

From Delaware Circuit Court; *Joseph G. Leffler,* Judge.

Action by Rebecca Miller against the Cleveland, Cincin-
nati, Chicago & St. Louis Railway Company. From a
judgment for plaintiff, defendant appeals.    Transferred
from Appellate Court under §1337u Burns 1901, Acts
1901, p. 590.    *Affirmed.*

*L. J. Hackney, Thompson & Thompson* and *Frank L.
Littleton,* for appellant.

*Templer & Templer,* for appellee.

GILLETT, J.—Action by appellee against appellant for
negligence resulting in an injury to her person. The com-
plaint was answered by a general denial.    There was a trial
by jury, which resulted in a verdict for appellee for $7,500,
upon which judgment was rendered.    The overruling of a
motion for a new trial is assigned as error.

Appellee received her injury by a fall upon a sidewalk as
she was proceeding along Hoyt avenue, in the city of Mun-
cie, at a point where said sidewalk intersects a certain switch
or "Y" extending from the main line of appellant to the
line of another railroad.    Appellant's counsel first present
the question whether the evidence shows that it was the duty
of the company to maintain said crossing, and in this con-
nection the claim is advanced that the evidence does not
show that the company owned the switch.    Appellee intro-
duced in evidence upon the trial certain interrogatories pro-
pounded to appellant, and its answers thereto.    Interroga-

tories numbered 7, 8, 9, 10, 11, 12, 14, 15 and 17, and the answers to such of the questions as were answered, are as follows:   "(7) Did the defendant on or about the years 1877, 1878 or 1879, or at any time since said date, put in a railroad switch that starts in the vicinity of Council street, in said city, from the main line of the defendant, and runs thence in a southeasterly direction up to and across Hoyt avenue in said city, and into or near the yards of the sawmill of J. C. Wood & Co. ?   A. This company acquired the right of way for the 'Y' for the purpose of connecting with the Ft. Wayne, Muncie & Cincinnati Railroad in 1874 and 1875, and as near as can now be determined the track was staked out December 22, 1875, and constructed soon thereafter.   (8) Did the defendant from the 1st of January, 1903, and up to and after the 21st of March, 1903, own, operate and maintain the switch aforesaid ?   A. This company maintains this track up to the first joint south of Willard avenue, which is about fourteen inches south of the street line.   It has always claimed ownership to this point. South of here, through J. C. Wood's property, Mr. Wood claims ownership of track, and south from Wood's south line the Ft. Wayne, Cincinnati & Louisville Railroad connect with their tracks.   (9) Did the defendant from the 1st of January, 1903, up to and including the 21st of March, 1903, own, operate, use and maintain the switch that crosses Hoyt avenue, and mentioned and described in plaintiff's complaint ?   A. This company operated and used the switch, but ownership and maintenance applies same as No. 8.   (10) If you answer 'No' to question No. 9, then state who does own said switch, and owned and operated said switch on the 21st of March, 1903 ?  A.—.   (11) State whether the defendant uses said switch mentioned in said complaint that crosses Hoyt avenue as a part of its railroad system in the city of Muncie.   A. Yes.   (12) State how often the defendant transported cars over said switch per week from the 1st of January, 1903, to the 21st of March,

1903. A. This track is used almost every day in switching cars from J. C. Wood's and Kirby's lumber yards. * · * * (14) State when the defendant put in the boards where said switch mentioned in plaintiff's complaint crosses the sidewalks on Hoyt avenue. A. Planking across Hoyt avenue was renewed during the summer of 1901. (15) State how long the defendant has owned said switch mentioned in plaintiff's complaint. A. Have not been able to ascertain. * * * (17) State when, if at any time, the defendant secured the right of way from the city of Muncie to construct and maintain said switch mentioned in plaintiff's complaint up to and across Hoyt avenue in said city. A. Have not been able to ascertain."

The statute requires that interrogatories submitted to a party shall be answered without evasion. Where addressed to a corporation, it may select, and it is its duty to

1. select, in answering interrogatories, an agent who is familiar with the facts. See *Louisville, etc., R. Co.* v. *Henly* (1883), 88 Ind. 535. It seems to us that, in view of these considerations, the answers to said interrogatories established the duty of appellant to maintain said

2. crossing. The answers show that the company acquired the right of way for said switch track in 1874 or 1875; that it maintains and has always claimed ownership of the track to the first joint south of Willard avenue, which, as the other evidence shows, includes that portion of the track on Hoyt avenue, and that the company uses the track almost daily in switching cars to certain lumber yards. Other evidence shows that appellant had used said track for many years immediately preceding appellee's injury.

Since appellant maintains, claims and enjoys the track, and is unable to point to ownership in anyone else, we think that it must be held to have incurred the obligations in respect to the crossing which are an incident to ownership; and when to this is added the fact that appellant put in the

boards at said intersection, as we must conclude from the record, we do not see how it can be claimed that while it continued to use the track in the circumstances indicated it did not owe to appellee a duty in respect to the maintenance of the sidewalk at that point. Looked at in another way, appellee's proof made a *prima facie* case, and "a *prima facie* case must always stand until it is broken by the defendant's evidence." *Young* v. *Miller* (1896), 145 Ind. 652, 656. Under this rule the question as to appellant's duty was not an open one when the case went to the jury.

Complaint is made of the following instruction which was given by the court: "If you find for the plaintiff, in estimating the damages which she may recover, the court instructs you that she is not entitled to recover anything whatever for shortening her life, but you may consider that fact, if you find it to be a fact, in determining the extent of her injury." Preliminary to a discussion of this instruction it is proper to call attention to some of the other instructions upon the subject of damages. The court instructed the jury that only compensatory damages could be awarded. The jury was advised that it was its "duty to exclude an allowance of any sum for sickness, pain, suffering which is not shown by the evidence, with reasonable certainty, to be directly traceable to the alleged negligence of the defendant." There was also a direction not to "award damages for remote, uncertain and indirect results of the alleged fall of the plaintiff." It is in the light of these instructions that the instruction complained of is to be judged.

In *Richmond Gas Co.* v. *Baker* (1897), 146 Ind. 600, 36 L. R. A. 683, it was held that the fact that the life of the plaintiff would be shortened did not authorize an award of damages therefor, but in the course of the opinion the court said: "If the condition of the injured person is such that a shortening of life may be apprehended, this may be considered in determining the extent of the injury, the consequent

disability to make a living, and the bodily and mental suf-
fering which will result.     This, however, falls far short of
authorizing damages for the loss or shortening of life itself."
It is argued by counsel for appellant in this case that the in-
struction under consideration illogically authorized the jury
to consider, in forming a basis for damages, that which must
be omitted when the damages are assessed.     It is evident
that it was in the light of the language of the above decision
that the court framed the instruction complained of.     We
are of opinion that it was not calculated to mislead the jury.
The jurors were told with the greatest distinctness that the
plaintiff was not entitled to recover anything for the shorten-
ing of her life.     The consideration of that fact, if the jury
found it to be such, was not for the purpose of determining
her damages, but was limited to the purpose of "determining
the extent of her injury."     It can only be inferred from the
instruction that, although there could be no allowance for
the shortening of the plaintiff's life, yet, if the jury found
that such a result would follow from the injury, it was not
debarred from a consideration of the illness and suffering
which ordinarily attend as consequences upon an injury so
grave.     While, for obvious reasons, a plaintiff can not re-
cover for the shortening of his life, yet we know of no reason
why he may not recover as and for his damages in life, a
sum sufficient to compensate him for the extra burden of
suffering, which a jury may conclude, as a matter of sound
discretion under the evidence, will proximately be occa-
sioned by the negligence of the defendant.     See *Phillips* v.
*London, etc., R. Co.* (1879), 5 C. P. D. 280, 291.     We have
studied the instruction complained of very carefully, and,
while we can not commend it as a model, we think that,
keeping in mind its predominant assertion that the plaintiff
"was not entitled to recover anything whatever for the short-
ening of her life," the criticism of the qualifying clause ap-
pears to be verbal and superficial.     In the absence of any-
thing in the instruction which directly countenanced the

idea that under the guise of determining the extent of appellee's injury the jury might allow for an element which the court had just emphatically said could not be allowed for, we can not indulge the supposition that the jury drew the inference that in the same breath the court was contradicting itself. In the consideration of an instruction the initial point of inquiry is, was the jury misled? *Union Mut. Life Ins. Co.* v. *Buchanan* (1885), 100 Ind. 63; *Caldwell* v. *New Jersey Steamboat Co.* (1872), 47 N. Y. 282; Thompson, Charging the Jury, §131. A cause ought not to be reversed merely because it is obnoxious to verbal criticism. *Lake Shore, etc., R. Co.* v. *McIntosh* (1895), 140 Ind. 261; *Baltimore, etc., R. Co.* v. *Mackey* (1895), 157 U. S. 72, 15 Sup. Ct. 491, 39 L. Ed. 624; *South, etc., R. Co.* v. *Jones* (1876), 56 Ala. 507; *People* v. *Bruggy* (1892), 93 Cal. 476, 29 Pac. 26; 1 Blashfield, Instructions to Juries, §383; Thompson, Charging the Jury, §126. It was said by Church, C. J., in *Caldwell* v. *New Jersey Steamboat Co., supra:* "If the language employed is capable of different constructions, that construction will be adopted which will lead to an affirmance of the judgment, unless it fairly appears that the jury were, or at least might have been, misled." It is not necessary, however, to go as far as this to uphold the result as against the strictures of counsel upon the charge of the court. We can not regard as really ambiguous an instruction which can only be made to appear so by a process of verbal refining concerning a minor and qualifying phrase, where to do so would be to bring it in conflict with the principal proposition of the instruction which is expressed in language that does not admit of mistake.

Complaint is made that the court erred in refusing the first, third, fourth and eighth instructions tendered by appellant. The first and third of these instructions had reference to appellant's ownership of the switch, and, as stated in substance above, it is our opinion that that question was not an open one when the court in-

structed the jury. The charge which was given sufficiently covered the propositions of law presented by appellant's fourth and eighth instructions.

Appellant's final contention is that the assessment of damages is excessive. It appears from the evidence that by appellee's fall she sustained an oblique fracture of the left knee. The injury did not at first appear serious, but it resulted in a profound disturbance of the nervous system. Her suffering for several months was extreme. During this time the pains in her stomach, head and back were so severe that she would frequently cry out, and she slept but little. She was very nervous, and any loud noise, as the playing of a band or the rumble of a wagon, would cause her intense suffering, and would often cause her to vomit. On some occasions she vomited blood. She lost fifty-five pounds in weight, and a test showed she was seriously affected with anæmia. During her illness the pain in her stomach and bowels caused her to keep her lower limbs bent back, and it afterwards transpired that neither she nor the physicians were able to straighten them. The doctor who treated her testified that it was problematical whether she would ever be able to walk. Two disinterested physicians were appointed by the court to examine appellee, and she submitted to a thorough physical examination at their hands. These physicians, as witnesses, detailed at great length the conditions found by them, and their conclusions concerning the case. One of them, asked as to the prospect of recovery, testified: "Well, that depends upon conditions. If you will allow me to supply the conditions, and say that her environment and surroundings are to be just as favorable as they should be, it may take her, while even under such surroundings and conditions, a number of months—perhaps six or eight, or ten or twelve—and yet that is problematical, and can not be stated definitely." The testimony of the remaining physician was substantially the same. All of the medical witnesses ascribed her condition to the injury to her knee.

The claim of counsel for appellant that the damages are excessive is largely based on the answers to certain interrogatories submitted to the jury. These interrogatories 7. and the respective answers thereto were as follows: "(10) Do you award the plaintiff any sum in damages on account of the claimed drawn and stiffened condition of her knees? A. No. (11) Do you award the plaintiff any sum in damages on account of her claimed sickness and nervous condition after the middle of June, 1903? A. No. (12) Was the injury to the plaintiff's knee the only injury sustained by the plaintiff seriously affecting her? A. Yes. (13) Was the injury to the plaintiff's knee the only injury to the plaintiff treated by her physicians? A. Yes. (14) Was the injury to the plaintiff's knee, sustained on the 21st day of March, 1903, completely cured within five or six weeks after she sustained such injury? A. No." Interrogatories ten and eleven should not have been submitted. *Ohio, etc., R. Co.* v. *Judy* (1889), 120 Ind. 397; *Muncie Pulp Co.* v. *Davis* (1904), 162 Ind. 558, and cases cited.

We do not understand how the jury could have answered interrogatory twelve as it did, unless it had reference to the nature of appellee's injury at the time it was re- 8. ceived. Some thirty-five witnesses testified to appellee's past suffering, or testified to her serious condition at the time of the trial. There was absolutely no dispute upon the evidence concerning these subjects. Appellant did not call a witness, and the cross-examination did not tend, so far as we can perceive, seriously to discredit any witness who was called upon either of said subjects.

We are of opinion that the answers to interrogatories do not afford a ground for the reversal of this cause because the damages are excessive. Section 556 Burns 1901, 9. §547 R. S. 1881, provides: "When the special finding of facts is inconsistent with the general verdict, the former shall control the latter, and the court shall

give judgment accordingly." It has been many times ruled that the inconsistency of special findings with the general verdict is not a cause for a new trial. *Adamson* v. *Rose* (1868), 30 Ind. 380; *Stockton* v. *Stockton* (1872), 40 Ind. 225; *Tritlipo* v. *Lacy* (1876), 55 Ind. 287; *Northwestern, etc., Ins. Co.* v. *Blankenship* (1884), 94 Ind. 535, 548, 48 Am. Rep. 185; *Louisville, etc., R. Co.* v. *Kane* (1889), 120 Ind. 140.

In *Stockton* v. *Stockton, supra,* it was said: "It is next insisted that the court should have granted a new trial because of the insufficiency of the evidence. The evidence is not in the record, but counsel for the appellant say that the special findings contain all the material facts which were in issue, and they then proceed to argue that the special findings of the jury are inconsistent with the general verdict, and that for this reason the court should have granted the new trial. We can not concede the correctness of this position. When the question is made before this court as to the correctness of the ruling of the inferior court in refusing a new trial on account of the insufficiency of the evidence to justify the verdict, the evidence, and all the evidence, must be in the record, or we can not decide the question. The findings of the jury in answer to interrogatories propounded to them, can not be used as, or in lieu of, the evidence, to show the insufficiency of the evidence to justify the general verdict. If it be supposed that the special findings of the jury are inconsistent with the general verdict, the proper mode of presenting that question is to move, in the court below, for judgment on the special findings. Then, if the special findings are clearly inconsistent with the general verdict, it is the duty of that court to be governed by the special findings, and render the judgment in accordance with them, disregarding the general verdict. If the court refuse such motion, the party making it can except, and on appeal assign this ruling for error. But the ques-

tion can not be presented by a motion in the court below for a new trial, and the assignment of the overruling of that motion as error in this court."

In *Bedford, etc., R. Co.* v. *Rainbolt* (1885), 99 Ind. 551, 555, it was contended that a *venire de novo* should have been awarded because the answers to interrogatories showed that there had been either a failure to find on all the issues, or that there was an ambiguity in the finding or verdict of the jury; but this court said: "Until overthrown by a special finding, absolutely inconsistent with it, the general verdict stands, and the judgment which follows is supported by it, and does not in any manner depend for support on the special interrogatories."

Where a new trial is sought on the ground of excessive damages, attention is directed to the evidence, the same as it is where the legal sufficiency of the evidence is challenged under the sixth subdivision of the statutory grounds for a new trial. In *Chicago, etc., R. Co.* v. *Kennington* (1890), 123 Ind. 409, 410, Mitchell, C. J., said: "The rule upon which this court proceeds is, that if the general verdict is supported by the evidence a motion for a new trial will be overruled, which assigns as a reason that it is not so supported, without regard to the manner in which interrogatories may be answered." Some of the observations of this court in *Illinois Cent. R. Co.* v. *Cheek* (1899), 152 Ind. 663, are quite in point, although the question involved was not the same. It was there said: "Appellant, under its motion for a new trial, challenged the damages assessed as excessive. It is insisted that the special verdict does not find that the injuries which appellee sustained are permanent, and, therefore, it is insisted that the damages must be held to be excessive. But appellant in the lower court raised this question only by assignment, as one of the grounds in its motion for a new trial, that the damages were excessive; hence, under the circumstances, in support of this assignment, the court must look alone to the evidence

and not to the facts disclosed in the special verdict." It was intimated in *Chicago, etc., R. Co.* v. *Kennington, supra,* that a case might arise where the answers to interrogatories would be such that the ends of justice would require that the verdict should be set aside and a new trial ordered. In such a case the trial court might properly award a new trial on its motion, or on a ground not specified in the motion of the moving party. 14 Ency. Pl. and Pr., 932. Whether, in any case, this court would assert the power to review the action of the trial court where, under an assignment of a ground for a new trial calculated to raise the question, it appeared that such court, in disregard of such answers, had proceeded to judgment upon the verdict, is a question that we need not determine. All that is necessary to hold in this connection is that appellant's motion for a new trial, assigning that the damages were excessive, presented only the question whether, in view of the evidence, the court should on that ground have laid hands on the verdict.

The evidence of appellee's past and prospective sickness, pain and disability was such that, the verdict having received the sanction of the trial court, a case has not been made out for reversal because of excessive damages.

The questions which the appeal presents are disposed of, and, as we have found no error, the judgment is affirmed.