CITY OF TERRE HAUTE *v.* TERRE HAUTE WATER
WORKS CORPORATION ET AL.

[No. 19,263. Filed February 19, 1962. Rehearing
denied March 30, 1962.]

*Frank P. Crawford,* of Terre Haute, *Wendell Tennis,* of Sullivan and *George L. Diven,* Public Counselor, of Indianapolis, for appellant.

*Gilbert W. Gambill, Gambill, Cox, Zwerner & Gambill,* of counsel, of Terre Haute, *John H. Groves, Jerry P. Belknap, Howard J. Cofield* and *Barnes, Hickam, Pantzer & Boyd,* of counsel, all of Indianapolis, for appellee, Terre Haute Water Works Corporation.

MYERS, J.—This is an appeal from an order of the Public Service Commission of Indiana wherein it authorized appellee, The Terre Haute Water Works Corporation, (1) to issue certain promissory notes in order to raise sufficient capital to carry out a proposed construction program and (2) to increase its rates for services rendered.

The Public Service Commission of Indiana and the then members thereof were made parties to this appeal. This is a fact-finding administrative tribunal which acts in a quasi-judicial capacity. When there are two opposing parties before it, as here, its action in making findings and issuing an order deemed detrimental by one of the parties is similar to that of a court which makes a decision determining a controversy between adverse parties. A court is never a party to an appeal from its decision. Likewise, under those circumstances, the Public Service Commission of Indiana is not a party to this ap-

peal and it was improper to name it, or the members thereof, as parties appellee. *Martin* v. *Indianapolis Water Co.* (1960), 130 Ind. App. 416, 162 N. E. 2d 709; *Lafayette Chapter, etc.* v. *City of Lafayette* (1959), 129 Ind. App. 425, 157 N. E. 2d 287.

On September 20, 1957, The Terre Haute Water Works Corporation (hereinafter called the Corporation) filed its petition before the Public Service Commission of Indiana (hereinafter called the Commission) seeking authority to execute and deliver its promissory notes in the aggregate principal amount of $700,000, plus interest, for the purpose of applying the proceeds therefrom to the payment of obligations incurred and to be incurred in connection with the construction of certain additions and improvements to its plants and equipment. It also asked for permission to increase the rates charged for water service furnished its customers in and adjacent to the City of Terre Haute.

Subsequently, the City of Terre Haute intervened in the cause, filing a motion to dismiss which was overruled. It later took an active part in all proceedings before the Commission, opposing the Corporation's petition.

Following proper procedure, the Commission conducted a hearing on the issues framed by the petition. Both parties presented evidence therein. On April 25, 1958, the Commission entered its findings and order which, in general, authorized the issuance of the $700,000 in promissory notes and the requested use of the proceeds therefrom, and granted the Corporation permission to increase its rates. The pertinent parts of the order increasing rates are as follows:

"IT IS THEREFORE ORDERED BY THE PUBLIC SERVICE COMMISSION OF INDIANA that Petitioner should be, and hereby is, granted permission and authority to increase its rates and charges for water utility services rendered by it in and adjacent to the City of Terre Haute, Indiana, sufficient to produce additional annual gross operating revenues in the amount of $256,459, and gross annual operating revenues in the amount of $1,126,207 (computed on the same basis and for the same period as reflected in Petitioner's Exhibit No. 11, Schedule 2), and sufficient to produce annual operating income available for return in the amount of $318, 381, on the basis of operating conditions at June 30, 1957.

"IT IS FURTHER ORDERED that the rates, tariffs and charges for water services, set forth in Appendix D, attached hereto and made a part hereof, should be authorized by this Commission, and are hereby approved, to be placed into effect at the then next regular billing date for water consumed and services rendered after the approval of this order, and after the Petitioner has filed a schedule of rates, tariffs and charges with the Tariff Division of the Engineering Department of this Commission, as hereinafter ordered, said billing to be for water consumed and services rendered after the effective date of this order, and in no event retroactive, with the exception of the rates and charges for municipal fire protection, which revised rates and charges shall become effective on January 1, 1959, and the present rates for municipal fire protection shall remain in effect until said date."

In supporting this order, the Commission found that the fair value of the Corporation's tangible property as of June 30, 1957, actually used and useful for the convenience of the public in rendering water utility service was "not less than $5,100,000"; that the fair rate of return in its water utility operations would range from 6% to 6-1/4% under present conditions;

that the Corporation should be permitted to increase its rates sufficient to produce additional annual gross operating revenues in the amount of $256,459, to produce gross annual operating revenues of $1,126,207, and to produce an annual operating income available for return in the amount of $318,381, which sum was deemed a fair return on the fair value of the Corporation's tangible property as of June 30, 1957, actually used and useful for the convenience of the public in rendering service.

Appellant filed a petition for rehearing which was denied by the Commission. Thereafter it filed its appeal in this court, asserting in its assignment of error that the order of the Commission is contrary to law.

That part of the Commission's order approving and authorizing the issuance of the $700,000 in promissory notes is not challenged or attacked by appellant in any way. Its argument is strictly limited to the validity of the order as it pertains to the rate increase.

Appellant argues that there is no evidence of probative value in the record upon which the Commission could properly make a finding in respect to the "fair value" of the Corporation's property used or useful in the public service. This attack is primarily directed at certain testimony of one of the Corporation's witnesses, E. W. Galloway, an engineer, and an exhibit prepared by his firm of engineers which was introduced into evidence.

Upon objection by appellant, testimony of Mr. Galloway pertaining to "fair value" was stricken from the record, and that part of the exhibit which had to do with "fair value" was ruled inadmissible. This objection was principally based upon the contention that "fair value" was a matter to be ascertained and de-

termined by the Commission and was the prime point in issue so that any evidence on the subject invaded the province of the Commission.

However, the record shows that the witness, Galloway, was an engineer with 53 years' experience in the design, construction and appraisal of water utility properties; that he testified at length and in detail as to a reproduction cost study of the Corporation's used and useful property as of June 30, 1957; that this included the original cost of the property, the original cost less depreciation, reproduction cost new, reproduction cost new less depreciation, and the cost of bringing the property to its then present state of efficiency. This evidence satisfies the controlling statute wherein the Commission is directed to value such property at its fair value. Section 54-203, Burns' Ind. Stat., 1951 Replacement; *Public Serv. Comm.* v. *Indianapolis Rys.* (1948), 225 Ind. 656, 76 N. E. 2d 841. We find there was sufficient evidence of probative value to sustain the findings of the Commission.

Appellant claims that such evidence is invalid because the testimony and exhibit rested upon the accuracy of a "report or cost study made in another case" which was not introduced in evidence and thus not before the Commission for examination. This was an inventory and appraisal of the Corporation's properties made by the witness in 1950 and filed with the Commission in connection with a previous rate case. The witness Galloway testified that it was used as a starting point in this case.

Whether this report was admissible in evidence is a question we are not called upon to answer. Whether

it should have been introduced, we likewise cannot say, as it is not in the record before us.

It is well established that an expert witness testifying as to value may consider matters not independently admissible. 32 C. J. S., Evidence, §545, p. 293; *Jones* v. *Snyder* (1889), 117 Ind. 229, 232, 20 N. E. 140; *Isenhour* v. *State* (1901), 157 Ind. 517, 527, 528, 62 N. E. 40. When an expert testifies as to scientific matter, relying in part on scientific books and publications, such books and publications do not have to be admitted in evidence before his testimony is admissible. *Isenhour* v. *State, supra.* The same rule would apply here.

Furthermore, in so far as appellant's brief discloses, the testimony concerning this 1950 report was admitted in evidence without any objection on the part of appellant, and witness Galloway was cross-examined about it. This being the case, appellant falls within the rule stated in *Klingler* v. *Ottinger* (1939), 216 Ind. 9, 17, 22 N. E. 2d 805, 809, as follows:

"All this evidence was received without objection. We are therefore not concerned with the question of its competency. A party who permits incompetent evidence on a material issue to be introduced without objection can not be heard to say on appeal that it should not be considered in determining if the finding is supported by the evidence. Its probative value, when so admitted, is for the court or jury to determine, notwithstanding such evidence might have been excluded if proper and timely objection had been made. This rule has been applied to hearsay and secondary evidence, as well as to evidence rendered incompetent for other reasons. *Suit* v. *Hershman* (1918), 66 Ind. App. 388, 391, 118 N. E. 310." See, also, *Hinshaw etc.* v. *Waddell* (1957), 128 Ind. App. 67, 72, 142 N. E. 2d 640, 642, where the court said:

"The appellant's brief must set out as much of the record as fully presents the question raised without resort to the transcript."

It is to be noted that many exhibits were introduced into evidence at the hearing, but appellant has set forth none of them in its brief. It has been held that where none of the exhibits constituting a part of the evidence are set forth in appellant's brief under the heading of Condensed Recital of the Evidence or Statement of the Record, any question as to the sufficiency of the evidence is waived. *Satterblom* v. *Wasson* (1942), 111 Ind. App. 377, 385, 41 N. E. 2d 674.

In its Finding No. 5, the Commission took note of an operating expense of the Corporation which represented payments made to American Water Works Service Company, Inc., under a service contract dated July 1, 1944. This finding reads as follows:

"5. *The Service Contract with Service Company.* Included in Petitioner's Operating Expenses for the twelve months ended June 30, 1957, is a total amount of $24,996.21, representing payments made to American Water Works Service Company, Inc., ('Service Company'), under a Service Contract of Petitioner with Service Company dated July 1, 1944. During such period, further payments of $2,532.40 were made under the Service Contract, which have been reflected in Petitioner's capital accounts. Neither the Public Counselor not the Intervenor City has claimed that such amounts should be disallowed in their entirety, but they have asked that the Commission pass on the reasonableness of the charges made under the Service Contract, in view of the intercorporate relations of the parties, pointing to the fact that both Petitioner and the Service Company are wholly owned subsidiaries of American Water Works Company, Inc., a Delaware corporation ('American'), approximately 60% of the

common capital stock of which is owned by Northeastern Water Company, Inc., ('Northeastern').

"The Service Contract (Item A) was duly filed with this Commission in July, 1944, as required by law, and has never been approved or disapproved by the Commission. Charges under such Service Contract were allowed as Operatng Expenses of Petitioner by the Commission in the last rate proceeding of the Petitioner in 1952 in Cause No. 23258, and similar charges under identical contracts between the Service Company and other Indiana affiliates of Petitioner similarly were allowed as Operating Expenses of such affiliates by the Commission in prior rate proceedings involving such affiliates, including Kokomo Water Works Company in 1950 in Cause No. 21718 and again in 1956 in Cause No. 26962, and Muncie Water Works Company in 1952, in Cause No. 23452. In summary, the Service Contract provides that Service Company will make available to Petitioner a variety of services such as executive, engineering, valuation, customer and employee relations, legal, accounting, secretarial and treasury, archives and records and files; the charges for such services are made at the actual costs incurred for Service Company in performing such services (such costs including overheads and an amount of $6,000 representing a 4% return on the $150,000 of actual capital stock investment of American in Service Company) and are allocated among the some ninety-odd companies having such contracts (all of which are operating companies owned by American or Northeastern) on a direct charge basis for services performed for the specific company, and common expenses are allocated according to separate allocation formulas varied according to the type of service. To determine the direct charges, all Service Company employees maintain time records showing the time devoted to the affairs of each individual company and charges are based on an hourly rate based upon the employee's salary and a portion of the actual overhead involved. For the twelve months ended June 30, 1957, Service Company rendered to Petitioner serv-

ices of various types and the charges therefor as the same affects operating expenses, are reflected by Petitioner's Exhibit No. 10, Schedule 4.

"The question was raised as to some of the formulas specified in the Contract for allocation of common expenses. The evidence shows that approximately 75% of the total charges billed Petitioner were direct charges and not all of the formulas involved were questioned. The principal objection went to allocation on the basis of revenues. This objection would have some bearing, however, such factor is only one of three items considered, in a formula which is itself only one of several formulas which in total, account for less than $7,000 of the total charges. We recognize that no formula for allocation of costs can be theoretically perfect and under all the evidence we conclude that the charges to expenses by the Petitioner resulting from the formulas specified in the Service Contract here involved are not unreasonable.

"On all the evidence we find that Service Company rendered Petitioner services for which Petitioner made payments totaling $27,528.61; that the amount so paid was not unduly unreasonable; and that the same should be taken into account in determining the fixing of rates for water utility service in this proceeding.

"Although the Commission has determined that the charges by the Service Company to the Petitioner are not unduly unreasonable for the twelve months ended June 30, 1957, the evidence shows that the charges made to the Petitioner by the Service Company are not entirely controllable by the Petitioner and that the Petitioner should be required to file with this Commission, along with its annual report, a special report covering the same period as that covered by the annual report showing the total revenues received by the Service Company, the amounts and the affiliate companies from which said revenues were received, the total charges by the Service Company to the Petitioner in detail and the total charges made by the Service Company to all other affiliates showing the amount of charges to each affiliate company."

Appellant contends that the service contract never has been approved or disapproved by the Commission, and thus it failed to make any specific findings as to the reasonableness of the charges made; that there was no evidence of probative value from which the Commission could have made specific findings as to the charges.

The statute applicable to contracts such as the one in question is §54-403, Burns' Ind. Stat., 1951 Replacement, the pertinent part of which reads as follows:

"No management, construction, engineering or similar contract, hereinafter made, with any affiliated interest, as hereinbefore defined, shall be effective unless it shall first have been filed with the commission. If it be found that any such contract is not in the public interest, the commission, after investigation and a hearing, is hereby authorized to disapprove such contract."

The only requirement is that the service contract be filed with the Commission before it may become effective. After it has been filed, the contract becomes effective immediately and remains such unless disapproved by the Commission. There is no requirement that it must first be approved. Appellant cites no authority which is contrary to the clear language of the statute as set forth above.

It is claimed that there was no specific finding that the service charges were reasonable, although appellant requested that the Commission pass upon that point. It seems to us that the finding answers this objection when it stated as follows:

"On all the evidence we find that Service Company rendered Petitioner services for which Petitioner made payments totaling $27,528.61; that the amount so paid was not unduly unreason-

able; and that the same should be taken into account in determining the fixing of rates for water utility service in this proceeding."

Appellant argues that the finding on the service contract is not supported by evidence of probative value. The contract itself was admitted into evidence as Item A. Petitioner's Exhibit No. 10, Schedule 4, which, according to the finding, reflected various types of services rendered to the Corporation and the charges therefor for the twelve months ending June 30, 1957, was also admitted into evidence. We again note that these exhibits are nowhere to be found in appellant's Statement of the Record or Condensed Recital of the Evidence in its brief. Thus, appellant falls within the rule of waiver propounded in the case of *Satterblom* v. *Wasson, supra.*

However, there was testimony presented by the president and director of the Corporation that these services were absolutely essential to the normal operation of the Corporation, and were better performed and secured at less cost than they could have been performed and secured otherwise. Witness Galloway testified that they were performed at actual cost plus a four per cent. return on the actual capital investment in the Service Company, and that the formula followed had been approved by the Securities and Exchange Commission. A vice-president of the Service Company stated that, in his opinion, based upon his experience, the Corporation received essential services under this contract at a cost to it far below that which it would incur if it enlarged its own staff or engaged independent professional experts.

The testimony of these witnesses supplied ample evidentiary support for the Commission's finding on

the matter of the service contract. Where the findings of the Commission are supported by substantial evidence and the Commission has conformed to statuory procedural methods, this court should not disturb them. *Pub. Serv. Comm. et al., etc.* v. *Ind. Bell Tel. Co.* (1956), 235 Ind. 1, 130 N. E. 2d 467.

Appellant's final contention is that the decision of the Commission is contrary to law because it holds that appellant had the burden of proof in respect to the unreasonableness of any charges made by the Service Company to the Corporation. This is based on two statements in the Commission's order, which read as follows:

"However, no evidence was offered [by appellant] as to what, if any, changes were desired in the present or proposed rate schedule."

"No evidence was introduced [by appellant] attacking or questioning such depreciation rate and on the basis of its knowledge of water properties of like kind, character and size in Indiana, the Commission deems that such rate is adequate and proper and the adjustments made to reflect the effect of same upon the earnings of the Petitioner are herein allowed for the purpose of fixing rates in this proceeding."

Appellant claims the Commission "labored under the erroneous impression that as a matter of law, the burden of proving the unreasonableness of costs, charges, rates, depreciation, etc., was upon the Intervenor [appellant] or the Public Counselor; whereas the burden of proof is upon the Petitioner, Appellee below, to show the reasonableness and fairness of the proposed rate schedule."

In so far as the rate schedule is concerned, the evidence shows that the Corporation proposed a 35 per

cent across-the-board increase of its existing rates to provide additional revenues, and it did so because the existing rates previously established by the Commission in 1952 were considered equitable to all classes of customers. There was testimony to this effect from the president of the Corporation. This evidence was relied upon by the Commission in making its finding. In so doing, the Commission noted that the Corporation had requested that administrative notice be taken of the fact that no complaints had been filed regarding the form of the existing rate structure. The fact that the rate structure had been in effect without complaint was sufficient to establish a *prima facie* case of reasonableness as between the classes of customers. In this connection, we refer to a statement made by the New York Department of Public Utilities in the case of *Re Rochester Gas & Electric Corporation* (1940), 33 P. U. R. (N. S.) 393, 524, as follows:

> "In the absence of convincing evidence to the contrary, it must be assumed that the fact that a schedule of rates has been in effect for a long period is at least presumptive evidence that the relationship of the various rates to each other is satisfactory to the company; otherwise, it would have long ago filed modified rates. If this is so, or in the absence of proof to the contrary, any increases found justified should be distributed on approximately a straight percentage basis."

The Commission's comment that no evidence was offered by appellant as to what, if any, changes were desired in the proposed rate schedule, did not impose any burden of proof upon appellant, but merely recognized that appellant had the burden of going forward with the evidence after the Corporation had presented a *prima facie* case. 20 Am.

Jur., Evidence, §1251, p. 1102. The general rule in Indiana is that " 'a *prima facie* case must always stand until it is broken by the defendant's evidence.' " *Cleveland, etc., R. Co.* v. *Miller* (1905), 165 Ind. 381, 385, 74 N. E. 509, 510; *Young et al.* v. *Miller et al.* (1896), 145 Ind. 652, 656, 44 N. E. 757, 759. The Commission committed no error in making this statement.

The same rule applies in regard to the Commission's comment that no evidence was introduced by appellant attacking or questioning the depreciation rate. We find that there was sufficient evidence in the record presented in reference to the depreciation rate to be applied to the Corporation's utility property so as to make a *prima facie* case as to the reasonableness of the rate. Thus, appellant again had the burden of going forward with the evidence, if any, to show why it felt the depreciation rate was improper. This it failed to do and, accordingly, the Commission's comment was only a recognition of the ordinary legal effect of such failure.

We find that no error was committed by the Commission prejudicial to appellant in its order of April 25, 1958, and it is therefore affirmed.

Ryan, C. J., Kelley, P. J., and Ax, Bierly, Cooper, Gonas, and Pfaff, JJ., concur.

NOTE.—Reported in 180 N. E. 2d 110.