## KNAPP v. THE STATE.

[No. 20,765.   Filed February 8, 1907.]

1. EVIDENCE.—*Presumptive.*—*Relevancy.*—Evidence of a collateral fact is admissible to prove the controverted fact, provided a logical and reasonable inference of the existence of the controverted fact can be drawn from the existence of such collateral fact.   p. 156.

2. SAME.—*Reports of Dangerous Character of Decedent.*—*Denial by Showing True Character.*—Where defendant testifies that he had heard, from unknown persons, reports that the decedent had killed a man in arresting him, the State may prove, in rebuttal, that the man supposed to have been killed died from natural causes and had no marks of violence upon him.   p. 156.

3. TRIAL. — *Instructions.*—*Phrasing of.*—It is not reversible error to refuse to give a requested instruction, where the court gives one substantially covering the points involved, though the requested instruction was more appropriately phrased than the one given.   p. 157.

4. SAME.—*Instructions.*—*Reasonble Doubt.*—*Individual Views of Jurors.*—An instruction, in a criminal case, that "each juror should act for himself and form his own judgment uninfluenced by and independent of the judgment of others, and thus determine the guilt or innocence of the defendant from his own standpoint," is not harmful to defendant because it lays too much stress upon the decisions arrived at by the jurors individually.   p. 158.

5. TRIAL.—*Instructions.—Nondirection as to Consultation to Arrive at Verdict.—Effect.*—An instruction, in a criminal case, which charges the jury as to their individual duties in arriving at the guilt of defendant, but which fails to direct them, in terms, to consult in arriving at their verdict, is not bad, since, there being nothing in such instruction to forbid such consultation, the jury would understand that it was their duty to consult. p. 159.

6. SAME.—*Instructions.—Verbal Criticisms.—Misleading Jury.*—Mere verbal criticism, hypercritical objections and strained constructions of instructions will not lead to the reversal of a case. p. 159.

7. SAME. — *Instructions. — Construction.—Misleading Jury.*—An instruction, open to two interpretations, will not be cause for a reversal, unless it can be said that the jury was misled thereby. p. 159.

8. SAME.—*Instructions.—Misleading Jury.—Presumptions in favor of Jury.*—Whether an instruction misled the jury is a practical and not an academic question, jurors being presumed to be possessed of good common sense. p. 159.

9. SAME.—*Instructions.—Nondirection.—Duty of Parties to Present Applicable Instructions.*—Where a given instruction fails to direct the jury to consult in determining their verdict, no complaint can be made thereof, unless the complaining party tenders to the trial judge a proper instruction covering such point. p. 160.

10. SAME.—*Instructions.—Reasonable Doubt.—Individual Opinions of Jurors.*—An instruction which tends to cause the jurors to think it would be improper to render a verdict of guilty if any of them individually should have a reasonable doubt of defendant's guilt, is improper, since, upon consultation, a juror may become convinced of his error in such opinion. p. 160.

11. SAME.—*Instructions.—Singling out Facts.—Intoxicated Witnesses.—Credibility.*—It is not reversible error, in a criminal case, to refuse to charge that the jury may, in weighing the testimony, consider whether any of the witnesses were intoxicated, since the jurors are presumed to be fully informed upon such question. p. 160.

12. SAME.—*Instructions.—General Rules Preferable to Special.*—General instructions that the jury should consider all matters in connection with the witnesses which would, in their judgment, throw light upon their credibility, are preferable to special. p. 161.

13. APPEAL.—*Briefs.—Points and Authorities.*—A failure to refer to a question in the "points and authorities" portion of the brief, is a waiver of such question.   p. 163.

14. SAME.—*Briefs.—Failure to Set out Evidence to Show Instruction Asked was Applicable.*—A failure, by appellant, to set out in his brief the evidence to show that a requested instruction was applicable thereto, is a waiver of such alleged error.   p. 163.

From Wayne Circuit Court; *Henry C. Fox,* Judge.

Prosecution by the State of Indiana against John Knapp. From a judgment of conviction and a sentence of life imprisonment, defendant appeals.   *Affirmed.*

*Robbins & Starr,* for appellant.

*Charles W. Miller,* Attorney-General, *William C. Geake, C. C. Hadley, H. M. Dowling* and *Wilfred Jessup,* for the State.

GILLETT, J.—Appellant appeals from a judgment in the above-entitled cause, under which he stands convicted of murder in the first degree.   Error is assigned on the overruling of a motion for a new trial.

Appellant, as a witness in his own behalf, offered testimony tending to show a killing in self-defense.   He afterwards testified, presumably for the purpose of showing that he had reason to fear the deceased, that before the killing he had heard that the deceased, who was the marshal of Hagerstown, had clubbed and seriously injured an old man in arresting him, and that he died a short time afterwards.   On appellant's being asked, on cross-examination, who told him this, he answered: "Some people around Hagerstown there.   I can't say as to who it was now."   The State was permitted, on rebuttal, to prove by a physician, over the objection and exception of the defense, that the old man died of senility and alcoholism, and that there were no bruises nor marks on his person.   Counsel for appellant contend that it was error to admit this testimony; that the question was whether he had, in fact, heard the story, and not as to its truth or falsity.

While it is laid down in the books that there must be an open and visible connection between the fact under inquiry and the evidence by which it is sought to be estab-

1. lished, yet the connection thus required is in the logical processes only, for to require an actual connection between the two facts would be to exclude all presumptive evidence. 1 Best, Evidence (Morgan's ed.), §90. Within settled rules, the competency of testimony depends largely upon its tendency to persuade the judgment. 1 Bentham, Rationale of Judicial Ev., 71, *et seq.; Chicago, etc., R. Co.* v. *Pritchard* (1907), *post;* 398. As said in 1 Wharton, Evidence (3d ed.), §20: "Relevancy is that which conduces to the proof of a pertinent hypothesis." In *Stevenson* v. *Stewart* (1849), 11 Pa. St. 307, it was said: "The competency of a collateral fact to be used as the basis of legitimate argument, is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough if these may tend, in a slight degree, to elucidate the inquiry, or to assist, though remotely, to a determination probably founded in truth." See, also, *Trull* v. *True* (1851), 33 Me. 367; *State* v. *Burpee* (1892), 65 Vt. 1, 25 Atl. 964, 19 L. R. A. 145, 36 Am. St. 775; *Brown* v. *Clark* (1850), 14 Pa. St. 469; *Wells* v. *Fairbank* (1851), 5 Tex. 582; *Holmes* v. *Goldsmith* (1893), 147 U. S. 150, 37 L. Ed. 118, 13 Sup. Ct. 288.

We are of opinion that the testimony referred to was competent. While appellant's counsel are correct in their assertion that the question was whether appellant

2. had heard a story to the effect that the deceased had offered serious violence to the old man, yet it does not follow that the testimony complained of did not tend to negative the claim of appellant as to what he had heard. One of the first principles of human nature is the impulse to speak the truth. "This principle," says Dr. Reid, whom Professor Greenleaf quotes at length (1 Greenleaf, Evidence [Lewis's ed.], §7, note) "has a powerful operation,

even in the greatest liars; for where they lie once they speak truth a hundred times." Truth speaking preponderating, it follows that to show that there was no basis in fact for the statement appellant claims to have heard had a tendency to make it less probable that his testimony on this point was true. Indeed, since this court has not, in cases where self-defense is asserted as a justification for homicide, confined the evidence concerning the deceased to character evidence, we do not perceive how, without the possibility of a gross perversion of right, the State could be denied the opportunity to meet in the manner indicated the evidence of the defendant as to what he had heard, where he, cunningly perhaps, testifies that he cannot remember who gave him the information. The fact proved by the State tended to discredit appellant, since it showed that somewhere between the fact and the testimony there was a person who was not a truth speaker, and with appellant unable to point to his informant, it must, at the least, be said that the testimony complained of had a tendency to render his claim as to what he had heard less probable.

Appellant, by instruction three, asked the court to charge, "that every individual member of the jury must act upon his own responsibility, and no one is bound by the conclusion of the majority, if such conclusion does not agree with his own, deliberately formed after a careful consideration of the evidence and consultation with his fellow jurors." This instruction was refused, but, in lieu thereof, the court gave the following: "In deliberating upon the evidence for the purpose of finding a verdict, each juror should act for himself and form his own judgment, uninfluenced by, and independent of, the judgment of others, and thus determine the guilt or innocence of the defendant from his own standpoint." It may be conceded that in appellant's instruction above set forth there is found a correct statement of the law, and it may

also be conceded concerning the court's instruction that, although its fundamental idea is right, it is unhappily phrased, but as was said by this court in *Shenkenberger* v. *State* (1900), 154 Ind. 630, 642: "The form of expression in the special instruction proposed by counsel may be much more forcible and expressive than that adopted by the court; but, it does not follow that such form is to be preferred, or that it states the law more accurately. When a special instruction is presented, the material point is the idea embodied in it, and not the language used to express that idea. In every case, the court has the right to choose its own mode of expression, and to clothe its ideas in such words as it deems suitable."

Concerning appellant's instruction three, his counsel merely assert in argument that it is plainly the law, and that the refusal to give it was material error. They 4. fail to point out wherein, upon the point instructed on, the instruction given falls short of the instruction tendered. Indeed, it appears that counsel's complaint of the instruction given is that it carried the idea of individual responsibility so far as to err in the other direction. Concerning said instruction appellant's counsel say: "It, in effect, tells the jury that each juror should act independently of others, and not be influenced in any way by the judgment of others. . It lays down the proposition that each individual member of the jury must go into a corner by himself and deliberate on the cause and come to his own conclusions; that he must not consult with his fellow jurors or discuss the evidence. It forbids the interchange of views." Surely, in view of these claims, we are not called on to analyze the instruction given to show that it contains the essential elements of the point on which appellant sought, by instruction three, to have the court instruct the jury.

Referring to what appears to be counsel's real objection to the action of the court, as indicated by their language

above quoted, we pause to consider whether there should be a reversal because of the instruction given.

Notwithstanding the strictures of counsel, we nevertheless feel warranted in asserting that the instruction falls far short of stating to the jury that its members must not discuss the evidence or indulge in an interchange of views concerning the guilt or innocence of the accused. Independence of judgment in the reaching of a conclusion is the fundamental idea of said instruction. There is not a word in it which would forbid the fullest consultation. The cause will not be reversed merely because it is open to verbal criticism. *Cleveland, etc., R. Co.* v. *Miller* (1905), 165 Ind. 381, and cases cited. The general effect of a charge is to be considered, and hypercritical objections thereto will not avail. 1 Blashfield, Instructions to Juries, §382. The language should receive a reasonable construction, under all of the circumstances, and not a strained or forced one. *Davenport* v. *Cummings* (1863), 15 Iowa 219. If the language used is capable of different constructions, the construction is to be preferred which will lead to an affirmance, unless it can reasonably be said that the instruction was calculated to mislead the jury. *Cleveland, etc., R. Co.* v. *Miller, supra; Caldwell* v. *New Jersey Steamboat Co.* (1871), 47 N. Y. 282; *People* v. *McCallam* (1886), 103 N. Y. 587, 9 N. E. 502. The test question in every case is: Was the jury misled? *Cleveland, etc., R. Co.* v. *Miller, supra; Indiana, etc., Traction Co.* v. *Jacobs* (1907), 167 Ind. 85. In determining this we do not have an academic question to deal with. The question is a concrete one. This is not a question concerning the matter of laying down as a rule of law a proposition that presumptively jurors would know nothing of, but it is a question whether we are to strain after an inference, the essential thought being right, that the jurors were led to do a thing that no man of common sense

would think was required. It would be no less than pre-
posterous to suppose that the instruction, worded as it was,
was calculated to lead the jurors to refuse to consult.
Appellant's instruction three contains the idea of jurors
consulting, but we do not understand that his counsel are
on this ground complaining of the refusal of said instruc-
tion. If they were, it would be enough to say that the
necessity of consultation was not put forward as
a substantive proposition in the instruction, but was
mentioned as a mere limitation upon its former lan-
guage. If counsel deemed it expedient that there should be
a direction to the jury to consult—a course which finds no
parallel in our individual experience—fairness to the trial
court required that the demand to have the jury so instructed
should be brought forward in a substantive way, and not
merely as a part of the setting of an instruction upon some
other proposition.

Instructions twenty-eight and twenty-nine tendered by
appellant were erroneous. While a juror should refuse to
join in a verdict of guilty so long as he entertains
a reasonable doubt as to the guilt of the defendant,
yet an instruction would be improper which was
calculated to lead a juror to infer that the mere entertain-
ing of a reasonable doubt, after a careful weighing of the
evidence and full consultation, amounted to a limitation
upon the right of the juror to join in a verdict of guilty.
Fuller deliberation and consultation might clear away the
juror's doubt, and render it proper for him to concur in the
conclusion of his associates.

The last objection urged for reversal is based on the re-
fusal of the court to give instruction five tendered by ap-
pellant. That instruction is as follows: "If the
jury believe from the evidence that any of the wit-
nesses who have testified in this cause were intox-
icated at the time of the facts about which they testified,
the jury may consider this fact in weighing the testimony

of such witnesses, and in determining to what extent, if at all, such intoxicated condition might probably affect the accuracy and clearness of the recollection of such witnesses of the facts to which they testified." According to Redfield, J., in order to predicate error upon the refusal of an instruction, it must be couched in such terms as to be sound to the full extent. *Vaughan* v. *Porter* (1844), 16 Vt. 266. As far back as *Lawrenceburg, etc., R. Co.* v. *Montgomery* (1856), 7 Ind. 474, 477, it was said: "It is not error to refuse an instruction, unless it ought to be given precisely in the terms prayed." This declaration has frequently been approved by this court. *Roots* v. *Tyner* (1857), 10 Ind. 87; *Goodwin* v. *State* (1884), 96 Ind. 550; *Ricketts* v. *Harvey* (1886), 106 Ind. 564; *Diamond Block Coal Co.* v. *Cuthbertson* (1906), 166 Ind. 290. It appears to us that the subject-matter of the instruction in question had so far to do with matters of fact that it might properly be refused. It was said in *Garfield* v. *State* (1889), 74 Ind. 60, 64: "The teachings of experience on questions of fact are not, however, doctrines of law which may be announced as such from the bench." But without going even thus far, it may be affirmed that there was no error in refusing the instruction before us. What a court may do in instructing upon matters of fact, and what it is compelled to do, are quite different propositions under the criminal code. §1901 Burns 1905, Acts 1905, pp. 584, 641, §260. There are some matters, such as the inferences which may be drawn from the failure to produce evidence which is solely under the control of the opposite party, as to the testimony of accomplices, and the like, where there may be real occasion for the court to advise the jury as to their authority in the premises, but concerning matters of ordinary experience and observation, general, rather than concrete rules, are preferable in instructing the jury. The effect of intoxication upon the perceptive faculties is so well understood

that no one need be instructed upon it, and the question as to the extent to which such faculties have been dimmed by the indulgence may safely be left to the argument of counsel in the concrete case. It will, upon thought, be appreciated that a special instruction concerning possible elements of weakness in the testimony of any class of witnesses can scarcely be framed without seeming to discredit the witnesses to whom it applies, or at least to place them in an unfavorable light as compared with witnesses whose testimony is not thus singled out. Should the principle be recognized that the court must give a special instruction upon the subject of intoxication, there would be no stopping place, and, the circumstances making the instruction apposite, it would, by the same token, have to be affirmed that upon request the court would have to instruct upon many such primary matters, as that the jury may consider whether the sight of any witness who has testified was in such condition as to affect his powers of observation, or whether the hearing of any witness was so deficient as to make it possible that he might have misunderstood, or whether any witness was so lacking in memory as to render it possible that he might have forgotten. It is altogether fairer to deal with these subsidiary matters by a general instruction, as was done in this case by the court's instruction seventeen, wherein it informed the jury, among other things, that they had a right to consider the opportunity that a witness had of knowing and understanding the things about which he testified, and that it was their duty to consider all matters in connection with the testimony of a witness which would, in their judgment, throw any light upon his credibility. Here was an instruction, cast into the form of a rule of law, that met the matter. We regard a general instruction as altogether a more appropriate way of dealing with questions wherein the jury has only to be advised of its right in the premises in order to deal with testimony as it should.

We may. further observe that appellant's counsel have not brought themselves within the rules of this court, so far as their instruction five is concerned, in that the failure to give said instruction is not referred to in the "points and authorities" portion of their brief, and also because they have failed to point out what witness, other than Charles Bertram, said instruction could have applied to, thus leaving us to go through nearly a thousand pages of record in order to determine whether, since the instruction refers to "witnesses," it was not refused on the ground that it was inapplicable.

We have now considered all of the points urged for a reversal, and we find no error. It is not urged that the verdict was not supported by the evidence, but, in view of the burden of punishment which the judgment carried, we have been at the pains to familiarize ourselves with the testimony. Having done so, we feel that we may add, without impropriety, that it appears to us the right result was reached.

Judgment affirmed.