POLLARD *v.* STATE OF INDIANA

[No. 27,449. Filed November 25, 1940. Petition for rehearing dismissed January 7, 1941.]

*Andrew Jacobs* and *Mark W. Rhoads,* both of Indianapolis; and *J. P. Barnard,* of Shelbyville, for appellant.

*Samuel D. Jackson,* Attorney General, *George B. Davis,* Deputy Attorney General, and (*George R. Tolen* and *Harold G. Barger,* both of Shelbyville, of counsel) for appellee.

SHAKE, J.—Curtis Pollard was charged jointly by affidavit with Harry Walker and Paul Walker with conspiracy to commit perjury. He was tried separately and found guilty by a jury, and he has appealed, assigning that the trial court erred in overruling his motion to quash the affidavit and in denying him a new trial.

In support of his proposition that the motion to quash ought to have been sustained, the appellant calls attention to an allegation in the affidavit that the defendants conspired "to have and *procure* the said Harry Walker and Paul Walker to testify falsely." (Our italics.) It is contended that the use of the word "procure" in this allegation definitely establishes that the crime attempted to be charged was conspiracy to commit subornation of perjury rather than conspiracy to commit perjury, because the language used in the affidavit substantially follows that of the statute defining subornation of perjury. § 10-3803, Burns' 1933, § 2621, Baldwin's 1934. The appellant therefore concludes that since the defendants Walker and Walker are named as principals in the affidavit, we have the anomalous situation whereby they are in effect charged with having been parties to a conspiracy to procure themselves to commit perjury. We cannot follow the appellant's reasoning. The affidavit alleged all of the facts necessary to constitute a charge of conspiracy to commit perjury. While the clause quoted might have been appropriate in a charge of conspiracy to commit subornation, the affidavit is insufficient on that theory for the reasons pointed out by the appellant, and it is therefore not bad for duplicity as charging two offenses in the same count. In *State* v. *Dawson* (1906), 38 Ind. App. 483, 485, 78 N. E. 352, 353, it was observed:

> "If one offense be sufficiently charged in an indictment or affidavit, the pleading will not be rendered bad by the fact that an additional offense is insufficiently charged; the latter charge should be treated as surplusage."

The state introduced evidence at the trial calculated to establish that the appellant had pending in the

Hancock Circuit Court a claim against the estate of George Bassett based upon a promissory note for $5,000, payable to the appellant, and purporting to have been executed by said decedent on January 4, 1939; that on or about March 9, 1940, the appellant conspired with Harry Walker and Paul Walker to have them testify at the trial of said claim to the effect that on said 4th day of January, 1939, they saw said George Bassett sign said note in the city of Greensburg, Indiana, and deliver the same to the appellant; that said Harry Walker and Paul Walker did so testify at the trial of said claim in the Hancock Circuit Court; and that their testimony was false, in that they did not see said George Bassett execute and deliver said note to the appellant. As a part of the state's case-in-chief, the purported note upon which the claim against the Bassett estate was based was introduced in evidence.

The appellant produced a number of qualified witnesses who, according to his offers to prove, would have testified, had they been permitted to do so, that they were acquainted with the handwriting of George Bassett and that his purported signature on the note in controversy was genuine. The state objected to this testimony and the trial court held that it was incompetent. It is contended by the state that this testimony was properly excluded because the matter of whether Bassett executed the note was not in issue; that the gravamen of the charge, in so far as it related to the note, was the falsity of the testimony of Walker and Walker to the effect that they saw the instrument signed and delivered at a time and place named; and, finally, that if there was any error in the exclusion of this evidence, it was harmless under the court's instructions.

From the broad viewpoint of the purposes for which evidence may be introduced, it may be observed that it

must be calculated to either establish or explain facts or circumstances pertinent to the inquiry.

The test to be applied in such cases is one of relevancy. *Knapp* v. *State* (1907), 168 Ind. 153, 79 N. E. 1076, 11 Ann. Cas. 604. The absence of a motive for committing the crime charged is in the nature of an exculpatory circumstance which a defendant on trial is entitled to establish. 22 C. J. S., Criminal Law, § 614, p. 933. On principles of logic, such evidence is comparable with a showing of conduct manifesting a consciousness of guilt, which is admissible against him. To exclude such proof would place an arbitrary limitation on the accused that would be unjust, in view of the freedom allowed the prosecution in adducing facts and circumstances pointing to his guilt. The proper application of the rule is illustrated in *People* v. *Kepford* (1921), 52 Cal. App. 508, 510, 511, 199 P. 64, 65. In that case, the defendants were on trial for having taken and driven a motor vehicle in the absence and without the consent of the owner. To establish that they had no motive to commit the crime, the defendants offered evidence that one of their brothers had an automobile and that on the night the crime was alleged to have been committed the brother offered them the use of it. The trial court sustained an objection to the evidence. In holding that this was error, the appellate tribunal said:

"It is a familiar rule that a motive for the commission of a crime may be shown as a circumstance tending to show guilt and the absence of motive or reason for the commission of the alleged offense may be considered as a circumstance favorable to the accused. . . . Having, therefore, the permission of their brother to use his machine, they claim it would be less probable that they would willfully take some other machine without permission. Being able, in other words, to accomplish

their purpose lawfully, it is argued that they would be less likely to resort to unlawful means. If they had contended that they did not use Sherfey's machine at all or that they supposed they were taking their brother's machine, the materiality of the proposed evidence would be quite apparent. However, in aid of their plea of not guilty and to rebut the theory of the prosecution, they had the right to introduce any evidence that might logically relate to the question of guilty knowledge. The force of the claim as to the willfulness of the use of Sherfey's machine might be impaired if the jury believed that appellants had permission to use their brother's machine. This upon the theory, of course, that men do not ordinarily commit crime when they can just as easily accomplish their purpose in a lawful manner. We think, therefore, the evidence was admissible for what it was worth."

See also: *State* v. *Santino* (1916), 186 S. W. 976, and *Bufford* v. *State* (1930), 23 Ala. App. 521, 128 So. 126.

In the case at bar, if the note in controversy was genuine, that was a circumstance tending to establish that there was no rational motive for the appellant to conspire to produce perjured testimony to that effect. It is conceivable, of course, that one might be so debased that he would go to such unnatural lengths, but it might not be thought probable that he would do so, and this improbability might have probative value because, as was observed by a distinguished jurist, "the law contents itself with probabilities and declines to wait for certainty before drawing its conclusions." (Mr. Justice Cardoza, in *Lewis* v. *Ocean Acci. & Guarantee Corp.* [1918], 224 N. Y. 18, 120 N. E. 56, 7 A. L. R. 1129.) The weight to be given to the testimony, and whether it was of controlling importance, was for the jury. We merely hold that it was competent as bearing upon the subject of motive.

The state says that if it was error to reject the offered testimony, the appellant was not injured thereby because the trial court instructed the jury that in the absence of proof to the contrary, a valid note is presumed to have been executed on the date it bears and that possession of a note imports delivery thereof to the holder. One of the essential elements of the crime of perjury based upon the giving of false testimony is that the testimony was material to the issue. The state is therefore in no position to suggest that the testimony given by Harry Walker and Paul Walker in the Hancock Circuit Court to the effect that they saw the note in question signed by George Bassett was not material. If it was material, it must have been so on an issue raised with respect to the execution of said note, and if, as the state claims, Walker and Walker testified falsely in that regard, the appellant was entitled to show the true facts, and it was not proper to circumscribe him by the presumptions relating to negotiable instruments. The jury may have inferred that the note was a forgery from the fact that allegedly false testimony relating to that subject was given in a proceeding where the execution of the instrument was materially in issue, and for that reason the appellant should have been given an opportunity to dispel such inference.

In view of what we have said, the other errors relied on by the appellant are not of a character likely to arise in the event of a retrial. For error in excluding the offered testimony above referred to, the judgment is reversed, with directions to grant a new trial.

NOTE.—Reported in 29 N. E. (2d) 956.