ATTORNEY FOR PETITIONER:
**BRETT J. MILLER**
BINGHAM GREENEBAUM DOLL LLP
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**WINSTON LIN**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

**HAMISH S. COHEN**
**SEAN P. BURKE**
**RAYMOND J. BIEDERMAN**
**DAVID C. DICKMEYER**
MATTINGLY BURKE COHEN &
BIEDERMAN LLP
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED

Oct 26 2018, 3:21 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| | | |
|---|---|---|
| SAHARA MART, INCORPORATED, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 49T10-1709-TA-00017 |
| | ) | |
| INDIANA DEPARTMENT OF | ) | |
| STATE REVENUE, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER ON RESPONDENT'S MOTION FOR SANCTIONS AND CONTEMPT

**FOR PUBLICATION**
**October 26, 2018**

WENTWORTH, J.

Sahara Mart, Incorporated, has challenged the Indiana Department of State Revenue's final determination assessing it with unpaid Indiana sales tax liabilities for the 2013, 2014, and 2015 tax years (the years at issue). The matter is currently before the

Court on the Department's "Motion for Sanctions and Contempt" ("Motion"). The Court, being duly advised in the premises, grants the Department's Motion.

## FACTS AND PROCEDURAL HISTORY

Sahara Mart owned and operated two grocery stores in Bloomington, Indiana during the years at issue. (Pet'r Original Tax Appeal Pet. ("Pet.") ¶¶ 3, 4; Jt. Stip. Facts ¶¶ 3-5.) In May of 2016, after completing an audit, the Department determined that Sahara Mart had underreported its taxable sales during the years at issue and failed to remit the proper amount of sales tax to the State. (See Pet. ¶ 7.) The Department subsequently issued Proposed Assessments against Sahara Mart, including penalties and interest, totaling approximately $6.8 million. (Pet. ¶ 8, Ex. B.) The Proposed Assessments were based on gross annual sales figures the Department extrapolated from Sahara Mart's 2007 federal income tax return. (See Pet. ¶ 7.) (See also Pet., Ex. C at 2 (indicating that the Department requested actual business records and receipts from Sahara Mart during the audit to no avail).)

Sahara Mart protested the Proposed Assessments and provided the Department with copies of a federal audit report that documented its gross sales for the 2008 through 2011 tax years. (Pet. ¶ 9.) On January 13, 2017, the Department issued a Letter of Findings directing a supplemental audit in light of the federal report. (See Pet., Ex. C at 4.) After the supplemental audit was completed, the Department issued revised Proposed Assessments reducing Sahara Mart's total sales tax liabilities for the years at issue to approximately $1.5 million. (Pet. ¶¶ 11-12, Ex. F.) Believing the revised Proposed Assessments were still incorrect, Sahara Mart filed an original tax appeal on September 25, 2017.

On March 29, 2018, while the case was pending, the Department deposed Sahara Mart's majority owner, Mr. Javad Noorihoseini. During the deposition, Noorihoseini testified that Sahara Mart was generally operated by unpaid family members, friends, and other volunteers. (See Deposition of Javad Noorihoseini ("Noorihoseini Dep.") at 17:7-22:16, 23:15-19, 69:20-70:4, 78:11-78:23.) Noorihoseini further testified that while Sahara Mart occasionally paid for the services of independent contractors and consultants, it had no employees. (See Noorihoseini Dep. at 18:11-21:9 (stating unequivocally that Sahara Mart does not have, nor did it have during the years at issue, "any employees"), 27:16-29:5 (testifying that "sometimes we have to hire some people to consult with [our suppliers] on some levels if need be[ a]nd sometimes we contract people to do things for a period of time" like moving or preparing things), 187:4-10.) In addition, Noorihoseini testified that approximately 40% of the beer and alcohol Sahara Mart purchased annually for resale was never sold because it went bad and had to be destroyed. (See Noorihoseini Dep. at 203:9-205:6, 208:10-209:17.)

Questioning the veracity of Noorihoseini's deposition testimony, the Department launched an "independent" investigation. (See Resp't Corrected Br. Supp. Mot. Sanctions and Contempt ("Dep't Br.") at 6, 9 (stating that "it seemed highly unlikely a company could run two grocery stores each open seventy-six hours a week without any employees or that it would destroy huge amounts of alcohol on an annual basis rather than reducing its orders or otherwise adapting as a business").) During the course of its investigation, the Department secured affidavits from four individuals who averred that during the years at issue, they had been employed by Sahara Mart and were paid, mostly in cash, for each hour worked, and that they knew of other individuals who were,

3

like them, Sahara Mart employees.[1]  (See generally Dep't Br. at 10-13 (citations omitted).)  The affiants also stated that they never witnessed any destruction of alcohol by Sahara Mart.  (See generally Dep't Br. at 14 (citations omitted).)  Finally, several of the affiants stated that, after his deposition, Noorihoseini contacted them and attempted to secure their "cooperation" in the event they were contacted by the Department.  (See generally Dep't Br. at 16-20 (citations omitted).)  One affiant averred that Noorihoseini offered to pay her $1,000 "to cooperate."  (See Dep't Br., Ex. 4 ¶¶ 18-20.)

On May 22, 2018, the Department filed its Motion, asserting that Sahara Mart and Noorihoseini were "engaged in a fraudulent scheme to avoid paying taxes" and had committed perjury and witness tampering.  (See, e.g., Resp't Proposed Findings and Conclusions ("Dep't Findings") ¶¶ 10-12.)  Consequently, the Department requested the Court find them in contempt and sanction them – pursuant to both the Court's inherent power and the power granted to it under Trial Rule 37 – by dismissing the case with prejudice and awarding the Department its attorney fees.  (See Dep't Br. at 20-26.)  (See also Dep't Findings ¶¶ 1, 3.)  As support for its Motion, the Department submitted Noorihoseini's deposition, the affidavits of the four individuals who claimed they were Sahara Mart employees, and the affidavit of one of the Department's attorneys.

---

[1] The Department produced an affidavit by Amanda Christophel, who also claimed to be a Sahara Mart employee, but she did not sign her affidavit.  While the Department contends the affidavit was signed electronically, it did not submit a copy of the affidavit that comports with the electronic signature provisions contained in Indiana Trial Rules.  (Compare Resp't Proposed Findings and Conclusions ("Dep't Findings") ¶ 29 with Ind. Trial Rule 86(I)(1) (indicating that Indiana's E-Filing system requires electronic signatures be indicated by either a graphic image of the handwritten signature or "/s/" followed by the person's name).)  Consequently, the affidavit will not be considered.

4

The Court conducted a show cause hearing on the Department's Motion on July 12, 2018. On August 6, 2018, the parties filed proposed findings of fact and conclusions of law. Additional facts will be supplied as necessary.

**LAW**

Contempt

Contempt involves a disobedience that undermines a court's authority, justice, and dignity. Witt v. Jay Petroleum, Inc., 964 N.E.2d 198, 202 (Ind. 2012). There are two types of contempt: direct contempt and indirect contempt.[2] Henderson v. Henderson, 919 N.E.2d 1207, 1210 (Ind. Ct. App. 2010). Indirect contempt, which is at issue in this case, involves acts that occur outside the court's presence and personal knowledge. Id. Pursuant to Indiana Code § 34-47-3-3, a person is guilty of indirect contempt when he influences, or attempts to influence, a witness to give or abstain from

---

[2] Contempt proceedings may also be generally categorized as civil or criminal, according to the nature and purpose of the sanction imposed. Jones v. State, 847 N.E.2d 190, 199 (Ind. Ct. App. 2006), trans. denied. A civil contempt is a violation of a court order resulting in a proceeding for the benefit of the aggrieved party. Id. In other words:

> It is not an offense primarily against the dignity of the court, but rather is for the benefit of the party who has been injured or damaged by the failure of another to conform to a court order issued for the private benefit of the aggrieved party. Therefore . . . the primary objective of a civil contempt proceeding is not to punish the defendant, but rather to coerce action for the benefit of the aggrieved party. . . . [Thus, i]n a civil contempt action [any] fine is to be paid to the aggrieved party, and [any] imprisonment is for the purpose of coercing compliance with the order.

Duemling v. Fort Wayne Cmty. Concerts, Inc., 188 N.E.2d 274, 276 (Ind. 1963). "By contrast, a criminal contempt is an act directed against the dignity and authority of the court that obstructs the administration of justice and tends to bring the court into disrepute." Jones, 847 N.E.2d at 199. "Accordingly, a criminal contempt sanction is punitive in nature because its purpose is to vindicate the authority of the court, and it benefits the State rather than the aggrieved party." Id. See also Duemling, 188 N.E.2d at 276 (stating that "[p]unishment in the form of imprisonment or a fine levied against the defendant, which goes to the State and not to the injured party, is characteristic of a criminal proceeding").

giving testimony in a case before the court. See IND. CODE § 34-47-3-3 (2018). A party's failure to make or cooperate in discovery may also be regarded as an act of indirect contempt. See Ind. Trial Rule 37(B)(2)(d). These instances of indirect contempt are sanctionable by fines, imprisonment, or the payment of reasonable attorney's fees. See IND. CODE § 34-47-3-6(c) (2018); T.R. 37(B).

Discovery

"Discovery is the process by which the parties to an action ascertain the existence of material facts previously unknown." Jacob v. Chaplin, 639 N.E.2d 1010, 1012 (Ind. 1994) (citation omitted). Indiana's discovery rules are designed to allow a liberal exchange of information essential to litigate all relevant issues and to promote settlement. See Whitaker v. Becker, 960 N.E.2d 111, 115 (Ind. 2012); Trost-Steffen v. Steffen, 772 N.E.2d 500, 512 (Ind. Ct. App. 2002), trans. denied. Pretrial discovery procedures are intended to "'make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" Whitaker, 960 N.E.2d at 115 (citations omitted).

"Discovery is designed to be self-executing with little, if any, supervision of the court." Trost-Steffen, 772 N.E.2d at 512 (citation omitted). Nonetheless, Trial Rule 37 provides a court with broad latitude to sanction those who "[f]ail[] to make or cooperate in discovery[.]" T.R. 37(B). For instance, if a litigant fails to obey a court order to provide or permit discovery, Trial Rule 37 permits a court to treat the disobedience as contempt, prohibit the disobedient party from introducing designated matters into evidence, dismiss the action or proceeding or any part thereof, render a default judgment against the disobedient party, or require the disobedient party to pay the

reasonable attorney's fees of his opponent.  See T.R. 37(B)(2).  Courts have construed the acts of producing forged documents, lying in depositions or in answering interrogatories, soliciting witnesses to lie in their depositions, and destroying evidence, as failures to make or cooperate in discovery under both Indiana Trial Rule 37 and its nearly identical federal equivalent, Federal Rule Civil Procedure 37.  See, e.g., Prime Mortg. USA, Inc. v. Nichols, 885 N.E.2d 628, 650-51 (Ind. Ct. App. 2008) (citations omitted); Ramirez v. T&H Lemont, Inc., 845 F.3d 772, 775-76 (7th Cir. 2016); Brady v. U.S., 877 F.Supp. 444, 452-54 (C.D. Ill. 1994).  See also Fed. R. Civ. P. 37.

### Power of the Court

A court has "the inherent power to punish parties in the course of 'maintaining its dignity, securing obedience to its process and rules, rebuking interference with the conduct of business, and punishing unseemly behavior.'"  City of Gary v. Major, 822 N.E.2d 165, 169 (Ind. 2005) (citing State v. Shumaker, 157 N.E. 769, 775 (Ind. 1927)).  See also Prime Mortg., 885 N.E.2d at 651 (stating that "'the inherent powers doctrine is most often invoked where a party commits perjury or destroys or doctors evidence'" (quoting Quantum Commuc'n Corp. v. Star Broad., Inc., 473 F.Supp.2d 1249, 1269 (S.D. Fla. 2007))).  Indeed, as the Indiana Supreme Court has explained, a court's inherent power to sanction both the attorneys and the parties appearing before it is a necessary precondition to the exercise of its independent judicial power:

> To deny a court the power to enforce obedience to its lawful orders against parties who have been subjected properly to its jurisdiction in the first instance, is to nullify its effectiveness as an independent branch of our government. The power of a court to enforce compliance with its orders and decrees duly entered is inherent. No statutory sanction is needed. In both equity and law a court would be powerless to give effective relief were its arms tied by such requirements . . . To protect the proper functioning of judicial

7

proceedings, we also have imbedded this [inherent] power in numerous court rules [such as in Indiana Trial Rule 37]. Similarly, the judicial power encompasses the [inherent] ability to hold a litigant in contempt.

Noble Cty. v. Rogers, 745 N.E.2d 194, 198 (Ind. 2001) (citations omitted).

## ANALYSIS

During the show cause hearing, Sahara Mart was provided the opportunity to present evidence to show why it and Noorihoseini should not be held in contempt. See, e.g., IND. CODE §§ 34-47-3-5, -6 (2018); Holman v. Holman, 472 N.E.2d 1279, 1284 (Ind. Ct. App. 1985) (supporting the proposition that once the Court was informed of the facts alleged to constitute the perjury and witness tampering, Sahara Mart was to be given the opportunity to prove why it and Noorihoseini should not be held in contempt). Sahara Mart, however, did not deny, explain, or excuse the facts underlying the Department's contempt charge; rather, it moved to 1) dismiss the Motion on the basis that the Department violated Indiana Rule of Evidence 408, 2) strike Noorihoseini's deposition, and 3) strike the affidavits submitted by the Department. (See, e.g., Show Cause Hr'g Tr. at 13, 20, 28, 52.)

### 1. Indiana Rule of Evidence 408

At the outset, Sahara Mart argued that the Court should dismiss the contempt charge because the Department "violated Rule of Evidence 408" by twice referring in its written brief to a settlement conversation that occurred between the parties. (See Show Cause Hr'g Tr. at 20-21 (citing Dep't Br. at 3, 17).) Sahara Mart explained that the Department violated the Evidence Rule by "using [the] settlement conference as a preliminary step to proving witness tampering." (Show Cause Hr'g Tr. at 21-22, 41-42.) (See also Pet'r Findings Fact and Conclusions Law ("Sahara Mart's Findings") ¶

8

34(3)(a)-(c).)   Indiana Rule of Evidence 408, titled "Compromise Offers and Negotiations[,]" states as follows:

> **(a) Prohibited Uses.**  Evidence of the following is not admissible on behalf of any party either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> > (1) furnishing, promising, or offering, or accepting, promising to accept, or offering to accept a valuable consideration in order to compromise the claim; and
> >
> > (2) conduct or a statement made during compromise negotiations about the claim.  Compromise negotiations include alternative dispute resolution.
>
> **(b) Exceptions.**  The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Ind. Evidence Rule 408.

The Department's two references only indicate that the Department notified Sahara Mart during the settlement conference that it had begun to contact individuals who claimed to be paid employees of Sahara Mart and that its settlement position would be informed by what it learned.  (See Dep't Br. at 2-3, 17.)  (See also Show Cause Hr'g Tr. at 30-31.)  This information does not fall within Rule 408's evidentiary prohibition because the Department provided the references not to prove or disprove the validity of Sahara Mart's claim, but to inform the Court that it had notified Sahara Mart of its recent discovery activities.  See Evid. R. 408.  Moreover, the two references to the settlement conference were contained in the Department's brief, and as attorney statements, they do not constitute evidence.  See, e.g., Campania Mgmt. Co. v. Rooks, Pitts & Poust, 290 F.3d 843, 853 (7th Cir. 2002) (stating that "it is universally known that statements of

9

attorneys are not evidence"); <u>Utilimaster Corp. v. Ind. Dep't of State Revenue</u>, 967 N.E.2d 92, 95-96 (Ind. Tax Ct. 2012) (explaining that a concern about confusing the trier of fact with what is – or is not – evidence generally arises in the context of a jury trial rather than a bench trial). (<u>See</u> <u>also</u> Show Cause Hr'g Tr. at 26 (where the Court reminds an attorney that his argument does not constitute evidence).) The Court thus denies Sahara Mart's motion to dismiss the Department's Motion for a "Rule 408 violation."[3]

2. Noorihoseini's Deposition

During the show cause hearing, Sahara Mart moved to strike the Noorihoseini deposition on the basis that it was "not authenticated by a court reporter's certification." (Show Cause Hr'g Tr. at 5-6.) More specifically, Sahara Mart has explained that

> [the] deposition transcript [submitted to the Court w]as not [] signed by [Noorihoseini]. Although the Indiana Trial Rules provide procedures to allow the use of an unsigned deposition transcript, [the Department] did not even attempt to follow those procedures here. <u>See</u> T.R. 30(E)(4). Without a T.R. 30(E)(4) certificate, the Depo may not be used "with the same force and effect as though the original had been signed by the witness."

(Sahara Mart's Findings ¶ 34(2)(a)-(c).)

Indiana Trial Rule 30(E) requires that a deponent be permitted to read and sign her deposition and, if desired, change any answer given in the deposition. Ind. Trial Rule 30(E)(1)-(2). If, however, the deponent fails to either sign the deposition or return it entirely, the transcribing reporter must: 1) execute a certificate as to those facts; and

---

[3] During the show cause hearing, Sahara Mart's counsel also claimed that the contempt charge should be dismissed because the Department "violated Disciplinary Rules 3.3(c) and (e)." (Show Cause Hr'g Tr. at 20.) Because Sahara Mart did not develop this allegation any further (<u>see</u> <u>generally</u> Show Cause Hr'g Tr.; Pet'r Findings Fact and Conclusions Law ("Sahara Mart's Findings")), the argument is waived.

then 2) deliver the certificate to the party who took the deposition.  See T.R. 30(E)(3)-(4).  The deposition may then be used by any party "with the same force and effect as though it had been signed" by the deponent.  T.R. 30(E)(3)-(4).

Sahara Mart's complaint that the copy of Noorihoseini's deposition submitted to the Court does not contain a certificate from the transcribing reporter, however, is of no moment here.  Indeed, Indiana Trial Rule 32(D)(4), titled "Effect of errors and irregularities . . . As to completion and return of deposition[,]" provides:

> Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, indorsed, transmitted, filed, or otherwise dealt with by the officer under [Trial] Rules 30 and 31 are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been ascertained.

Ind. Trial Rule 32(D)(4).  Accordingly, it was up to Sahara Mart to demonstrate during the show cause hearing that it had, with reasonable promptness, moved to suppress Noorihoseini's deposition, alleging a defect.  See, e.g., S. Ind. Gas & Elec. Co. v. Robertson, 354 N.E.2d 348, 349-50 (Ind. Ct. App. 1976) (explaining that a party's objection to an unsigned deposition was timely made the same day it received the deposition from the reporter).

Noorihoseini was deposed on March 29, 2018, and a copy of that deposition was sent to him for review on April 11, 2018.  (See Show Cause Hr'g Tr. at 5-7; Resp't Notice Submission ("Dep't Notice") (filed Aug. 14, 2018), Ex. A.)  Neither he nor Sahara Mart, however, moved to suppress the deposition or any part thereof before the show cause hearing held nearly three months later.  This lack of promptness is further compounded by the fact that neither Sahara Mart nor Noorihoseini has ever presented

11

an argument that there were inaccuracies in the substance of Noorihoseini's deposition testimony as transcribed. (See Show Cause Hr'g Tr.; Sahara Mart's Findings.) See also Dotson v. Stryker Corp., Case No. 18A-PL-220, 2018 WL 4003006, *5-6 (Ind. Ct. App. Aug. 3, 2018) (finding that the deponent's failure to sign a deposition was not fatal when there were no claimed inaccuracies in the substance of the deponent's testimony). Accordingly, the Court may properly consider Noorihoseini's deposition and denies Sahara Mart's objection to its use.[4]

### 3. The Affidavits

Finally, Sahara Mart argues that all five affidavits submitted by the Department should be stricken because each suffers from one or more infirmities that render it inadmissible. (See Show Cause Hr'g Tr. at 24.) Specifically, Sahara Mart explains that each of the affidavits should be stricken because they either: a) constitute hearsay; b) contain speculation and legal conclusions; c) were submitted with inadmissible attachments; or d) contain irrelevant information. (See Sahara Mart's Findings ¶ (1)(a)-(h).)

### a)    Hearsay

Sahara Mart has raised what it refers to as a "double hearsay" objection with respect to two of the affidavits. (See Show Cause Hr'g Tr. at 24, 47-48; Sahara Mart's Findings ¶ 34(1)(g).) Sahara Mart related its objection to specific statements made as proof of a fact within each of the affidavits and provided its reasons why these statements constituted inadmissible hearsay. (Compare Show Cause Hr'g Tr. at 24, 47-48 with Ind. Evidence Rule 801(a)-(c).) Accordingly, Sahara Mart's objection is

---

[4] On August 10, 2018, the Department moved to strike Sahara Mart's Trial Rule 30(E)(4) objection as "untimely." The Department's motion to strike is denied.

sustained, and the Court strikes paragraphs 4 and 9 of the Stahl affidavit (Dep't Br., Ex. 5) and paragraphs 3, 4, and 5 of the Bartel affidavit (Dep't Br., Ex. 7). The striking of the specific portions of these affidavits does not, however, have an impact on the outcome of the Court's disposition of the Motion.

Sahara Mart has further posited a broad and overarching hearsay objection to all the affidavits. Its entire argument supporting this general objection is as follows:

> Each of the affidavits is a statement that: "(1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted." Evid. R. 801(c). The Affidavits, therefore, constitute inadmissible hearsay to which no exception applies. Holmes v. Nat'l Collegiate Student Loan Tr., 94 N.E.3d 722, 725 (Ind. Ct. App. 2018) ("Inadmissible hearsay contained in an affidavit may not be considered . . . .").

(Sahara Mart's Findings ¶ 34(1)(a).)

Sahara Mart did not provide the Court with anything more than the quoted definition of hearsay, see Evid. R. 801(a)-(c), and a case citation in the apparent belief that the Court would develop legal arguments on its own and relate them to specific statements within each affidavit. The Court is not an advocate and will not do Sahara Mart's work for it. Accordingly, the Court denies all of Sahara Mart's remaining hearsay objections.

### b) Speculation and Legal Conclusions

The four affiants stated that during the years at issue, they were paid for their work at Sahara Mart, they were employees of Sahara Mart, and described when they worked at Sahara Mart, what their responsibilities were while they were working there, how they were paid, and how much they were paid. (See generally Dep't Br., Exs. 2-5.) Sahara Mart contends that the affidavits must be stricken because the "'question of

13

whether an individual is an employee . . . is a legal conclusion'" and "a lay witness cannot provide a legal conclusion." (Show Cause Hr'g Tr. at 46-47; Sahara Mart's Findings ¶ 34(1)(c) (citation omitted).)

Indiana Rule of Evidence 704 states that witnesses (in this case, the affiants) may not testify to legal conclusions. Ind. Evidence Rule 704(b). Nonetheless, the Court's legal conclusion whether an individual is an employee derives from the existence of certain facts, including whether one believes herself to be an employee. See, e.g., Mortg. Consultants, Inc. v. Maheny, 655 N.E.2d 493, 495-96 (Ind. 1995); Bauermeister v. Churchman, 59 N.E.3d 969, 974-76 (Ind. Ct. App. 2016) (citation omitted). Thus, the attestations of the affiants that Sahara Mart paid them for services rendered as employees is evidence that is properly considered by the Court. The Court therefore denies Sahara Mart's motion to strike the affidavits on the basis they contain inadmissible speculation and legal conclusions.

### c) Affidavit Attachments

The Department attached to one of the affidavits at issue a copy of a text message conversation between Noorihoseini and that affiant. In this text message conversation, Noorihoseini asked the affiant to contact another alleged Sahara Mart employee because she would not respond to him, and he needed her "to cooperate." (See Dep't Br., Ex. 4 ¶ 25, Ex. A.) The Department attached to another affidavit both a Facebook "screenshot" of a comment by another alleged employee that stated Sahara Mart did "not treat [its] employees well" together with an additional text message conversation. (See Dep't Br., Ex. 7 ¶ 4, Exs. 1, 2.) During the show cause hearing,

14

Sahara Mart moved to strike all three attachments because they were "incomplete." (See Show Cause Hr'g Tr. at 24, 49.) (See also Sahara Mart's Findings ¶¶ 15, 17.)

Pursuant to Indiana Evidence Rule 106, Sahara Mart should have, during the show cause hearing, followed up its objection by requiring "the introduction . . . of any other part – or any other writing or recorded statement – that in fairness ought to be considered" with the submitted attachments. See Ind. Evidence Rule 106. It did not do so, and despite having a subsequent opportunity to provide that information in its findings of fact and conclusions of law, it failed to identify the additional information that would have made the evidence complete. (See Show Cause Hr'g Tr.; Sahara Mart's Findings.) Consequently, the Court denies Sahara Mart's objection to strike the affidavits on the basis that their attachments were incomplete.[5]

### d) Relevance

Finally, Sahara Mart has objected to the admissibility of the affidavits on the grounds that they are "full of" irrelevant information. (See Show Cause Hr'g Tr. at 23-25 (complaining about statements in the affidavits that Sahara Mart sold alcohol on Sundays, that its "z-tapes" were inaccurate, that Noorihoseini skimmed cash from the company, and that he authorized the creation of fake invoices), 49-50 (complaining about statements in the affidavits that Sahara Mart paid individuals in cash); Sahara Mart's Findings ¶ 34(1)(f).) Sahara Mart argues that these statements have nothing to do with whether or not Sahara Mart had employees or destroyed alcohol and are thus used for the sole purpose of "inflaming" the Court. (Show Cause Hr'g Tr. at 23, 49.)

---

[5] In its findings of fact and conclusions of law, Sahara Mart also referred to the attachments as "uncertified[] and unauthenticated[.]" (Sahara Mart's Findings ¶ 34(1)(d).) Because Sahara Mart provided no further explanation or analysis for this claim, the Court will not address it.

Evidence is considered relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Ind. Evidence Rule 401. Here, the Court must make a factual determination whether Sahara Mart through Noorihoseini 1) lied about not paying its workers and having no employees, 2) lied about destroying alcohol, and 3) attempted to influence a witness to give, or abstain from giving, testimony in the case. The affiants' challenged statements are relevant to the Court's factual determination because they will affect the probability of two consequential facts: whether Sahara Mart operated using volunteers not employees and whether it destroyed rather than sold certain alcohol. Accordingly, the Court denies Sahara Mart's objection to strike the affidavits on the basis that their content is irrelevant.

### 4. Perjury and Witness Tampering

The Department has presented several pieces of evidence to support its allegations that Sahara Mart and Noorihoseini committed perjury and witness tampering[6] and are therefore in contempt of court. Rather than refute the facts presented in that evidence that underlies the Department's contempt charge, Sahara Mart chose to challenge the admissibility of the Department's evidence. Those admissibility challenges, however, have proven unsuccessful. After considering the admissible evidence, the Court holds that Sahara Mart – through Noorihoseini – has committed both perjury and witness tampering.

---

[6] Sahara Mart claims there can be no witness tampering here because the affiants were not, at least yet, named as witnesses. (See Show Cause Hr'g Tr. at 43.) The Court does not find this claim persuasive given the plain language of Indiana Code § 34-47-3-3. See IND. CODE § 34-47-3-3 (2018) (indicating by its language that it also applies to improper influence directed toward potential witnesses).

One commits perjury by making "a false, material statement under oath or affirmation, knowing the statement to be false or not believing it to be true[.]" IND. CODE § 35-44-2-1 (2018). To support a finding of perjury, the evidence must show that the false statement attested to is material to the outcome of the case. See Pollard v. State, 29 N.E.2d 956, 958 (Ind. 1940); Paschall v. State, 717 N.E.2d 1273, 1276 (Ind. Ct. App. 1999).

Here, Noorihoseini testified that one of the affiants, Brooke Henry, was never paid for her services, but she testified that she was paid by Sahara Mart for her services as a full-time nutritional adviser and alcohol purchaser at Sahara Mart for approximately 17 years. (Compare Noorihoseini Dep. at 20:3-11 with Dep't Br., Ex. 3.) Moreover, all the affiants swore they were paid during the relevant time periods. (See Dep't Br., Exs. 2-5.) Neither Noorihoseini nor Sahara Mart rebutted this evidence. Consequently, as finder of fact, the Court finds that Noorihoseini made false statements under oath that Sahara Mart workers were generally unpaid.

Noorihoseini's false statements are material to the outcome of the underlying case. For purposes of perjury, a material fact is one that is reasonably calculated to mislead an investigation. See Daniels v. State, 658 N.E.2d 121, 123 (Ind. Ct. App. 1995) (citations omitted). Noorihoseini's false statements about Sahara Mart operating with unpaid volunteers rather than employees was reasonably calculated to lead the Department to believe the so-called volunteers would not have evidence material to this matter. Sahara Mart's business practices and the manner and accuracy by which it kept its books and records – including its payment practices – are central to the claims and defenses in this matter. (See, e.g., Pet. ¶¶ 16-19 (alleging that because Sahara

17

Mart had federal records to support its gross sales during the year at issue, it was unnecessary for the Department to do its own best information assessment).) Accordingly, the Court holds that Sahara Mart and Noorihoseini committed perjury.

The evidence also shows that Sahara Mart and Noorihoseini engaged in witness tampering.[7] Indeed, the Department submitted two affidavits into evidence demonstrating that Noorihoseini attempted to influence potential witnesses into saying something that was not true and even offered to pay for such false statements. (Compare Noorihoseini Dep. at 20:3-11 with Dep't Br., Ex. 3 ¶ 18, Ex. 4 ¶¶ 19-26.) Again, Sahara Mart and Noorihoseini did not attempt to rebut the substance of this evidence. The Court therefore finds that Sahara Mart – through Noorihoseini – was also engaged in witness tampering.

### 5. Sanctions

Having found that Sahara Mart and Noorihoseini committed perjury and witness tampering, the Court finds them in contempt and that sanctions are appropriate. Sanctions must be "just" in light of the particular circumstances of the case. See, e.g., T.R. 37(B)(2); Prime Mortg., 885 N.E.2d at 649 ("'The only limitation on [a] court in determining an appropriate sanction is that the sanction must be just'" (citation omitted)). See also Smith v. Borg-Warner Auto. Diversified Transmission Prods. Corp., No. IP 98-1609-C-T/G, 2000 WL 1006619, *7 (S.D. Ind. July 19, 2000) ("The measure of sanctions to be imposed, if any, must be proportionate to the conduct and circumstances justifying sanctions" (citation omitted)). To that end, many other courts

---

[7] Witness tampering is "[t]he act or an instance of obstructing justice by intimidating, influencing, or harassing a witness before or after the witness testifies[.]" BLACK'S LAW DICTIONARY 1840 (10th ed. 2014).

have explained that "[a]s a fraud on the court, perjury may warrant the sanction of dismissal[.]" See, e.g., Montano v. City of Chicago, 535 F.3d 558, 564 (7th Cir. 2008); Brady, 877 F.Supp. at 453 ("'False testimony in a formal proceeding is intolerable'" (citation omitted)). Moreover, because "witness tampering is among the most grave abuses of the judicial process . . . it warrants a substantial sanction." Ramirez, 845 F.3d at 782 (citations omitted).

### a) Dismissal

In light of the evidence before the Court, the Department suggests that dismissal of Sahara Mart's case with prejudice is an appropriate sanction. Dismissal is a severe sanction given its finality, but the Court finds that the contempt detailed in this opinion is so egregious that it warrants just such a result.

During his deposition, Noorihoseini abused the discovery process by attempting to hide from the Department the identity of individuals who were paid for regular and continuous services to Sahara Mart and thus had knowledge about Sahara Mart's business practices. This deception not only impeded overall trial preparation, but also prejudiced the Department, which had to expend time and money gathering and presenting evidence of the perjury at the show cause hearing. Upon learning that the Department discovered and interviewed several of these individuals, Noorihoseini abused the judicial process further by asking several of the individuals to provide – or conceal – certain information, even offering money in exchange for their "cooperation." The Court will not tolerate Sahara Mart's blatant attempts to deceive both its opponent and this Court. Accordingly, the Court exercises its authority under both Trial Rule 37

and the Court's inherent power by imposing the just sanction of dismissal of this case with prejudice.

### b) Attorney's Fees

Once a party has been found in contempt of court, reasonable attorney fees may be awarded to the opposing party. See I.C. § 34-47-3-6(c); T.R. 37(B). See also Crowl v. Berryhill, 678 N.E.2d 828, 831 (Ind. Ct. App. 1997) (stating it is within a court's inherent power to award attorney's fees for civil contempt). Accordingly, the Department seeks attorney's fees "incurred in defending this action, taking [Noorihoseini's] Deposition, investigating the false claims made therein, calling and interviewing non-disclosed, non-party witnesses and bringing this Motion before the Court." (Show Cause Hr'g Tr. at 19, 57; Dept's Findings ¶ 37.) In support of that request, the Department submitted the affidavit of its attorney, Hamish S. Cohen, to show that it incurred $65,270.70 in expenses between December 20, 2017 (the date the Department filed its appearance in the case) and July 12, 2018 (the date of the show cause hearing). (See Aff. Hamish S. Cohen, Ex. A (filed July 16, 2018).)

In response, Sahara Mart contends the Department's request is unreasonable. Specifically, it states

> [t]hey're not entitled to fees from Day 1. . . . [Instead,] it would be solely related to the month of May of 2018, perhaps into June[.] . . . And by the way, about half of the fees in the invoice for May are totally unrelated to [Noorihoseini's] deposition[.]

(Show Cause Hr'g Tr. at 25-26.) (But see also Sahara Mart's Findings ¶ 36 (acknowledging that it "has likely engaged in inappropriate conduct by attempting to influence the testimony of a potential witness" and that a sanction of $5,000 would therefore be reasonable).)

The Court finds the guidance provided in the plain language of Trial Rule 37 that limits attorney's fees to those incurred as a result of the other party's discovery violation/failure instructive. T.R. 37(B). See also Popovich v. Ind. Dep't of State Revenue, 50 N.E.3d 407, 413-14 (Ind. Tax Ct. 2016). Accordingly, the Court finds that the appropriate reimbursement period in this case began on March 30, 2018, the day after the Department took Noorihoseini's deposition in which he lied, through July 12, 2018, the day of the show cause hearing. Indeed, it was during this time period that the Department had to adjust its entire approach in handling the case to account for the newly-discovered deceptive efforts of Sahara Mart and Noorihoseini. Upon review of the Department's evidence as to this time period, the Court finds the Department's expenses of $45,000.00 to be reasonable.

## CONCLUSION

At the outset of the show cause hearing, Sahara Mart informed the Court that it took the charges against it seriously and that it "d[idn't] come to th[e] courtroom throwing whatever [it] c[ould] at the wall to see what st[uck.]" (Show Cause Hr'g Tr. at 13-14, 20, 50-51.) But as described throughout this opinion, that is exactly what Sahara Mart did: it came to Court and attempted to avoid the charges of perjury and witness tampering merely by making a series of poorly-developed – and ultimately unsuccessful – evidentiary objections. Accordingly, the Court GRANTS the Department's Motion.

The Court hereby ORDERS this cause DISMISSED with prejudice. The Court

also ORDERS Sahara Mart to pay the Department's reasonable attorney's fees in the amount of $45,000.00.

SO ORDERED this 26th day of October, 2018.

_____
Martha Blood Wentworth, Judge
Indiana Tax Court

DISTRIBUTION:

Brett J. Miller, Winston Lin, Hamish S. Cohen, Sean P. Burke, Raymond J. Biederman, David C. Dickmeyer